UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT    FILED

SUZANNE MERSEREAU SEARLES, Plaintiff    CIVIL NO. 2:90-626 (PCD)

 pro se in forma pauperis    3:97-0260 (PCD)
 U.S. DIST. COURT
 NEW HAVEN CONN.    3:00-1115 (PCD)
 v.

WEST HARTFORD BOARD OF EDUCATION, ET    AUGUST 24, 2004
 AL., Defendants

## MOTION TO TRANSFER TO ORIGINAL VENUE AND FOR RELIEF FROM JUDGMENT

Plaintiff herein moves for transfer to Hartford District Court, the original filing venue of this action on July 23, 1990. Plaintiff also moves for relief from judgment in all three afore-cited cases because of newly discovered evidence that could not have been discovered through diligence because of defendants' sequestering of same from court purview. (The Law of Federal Courts, Charles Alan Wright) (appended exhibits)

Hartford County is the proper venue for litigation of each lawsuit because said county 1) is contiguous to the events having given rise to each suit, and 2) is more convenient for all liti-gants.

Judgments, in each of the three aforecited cases, reflect defendants' and their attorneys' misrepresentation, misconduct, sequestering/sealing of exhibits, and outright fraud re- plaintiff's meritorious claims of constructive discharge of her nineteen years-six month tenured contract per harassment, coercion, intolerable working conditions, perjurious testimony, and retaliation for her teachers' unions complaints re- same. F.R.C.P. 60(b)(6) permits relief from judgment at any time/date for intrinsic fraud upon the court by "...motion as prescribed in these rules or by an independent action...." Defendants' introduction of fabricated evidence and concealment of bona fide probative medical, academic, and pro-fessional evaluations of plaintiff's instructional expertise have indermined the integrity of judicial proceedings throughout each of the three lawsuits' tenure in New Haven. She thus moves for transfer and relief from judgment. She survives on SSI and welfare.

Respectfully submitted,

Suzanne M. Searles

Suzanne Mersereau Searles

45 Whispering Pines
Avon, CT  06001
August 8, 2004

Office of Human Resources
West Hartford Public Schools
28 South Main Street
West Hartford, CT  06107

To Whom It May Concern:

    I hereby request reactivation of my curriculum vitae and other documents already in your possession inclusive of the present letter in its entirety for the position of middle school English teacher as noted in Sunday's edition of The Hartford Courant. As all parties are well aware, Dr. James J. Moore, in his letter of May 22, 1987, appended hereto, stated that he would apprise me imminently of my tenured teaching position/assignment for 1987-1988 "...as soon as possible..." He did not. Philip Hall's letter dated September 15, 1987 to Dr. Moore confirms that my name "...did in fact appear on my (Dr. Hall's) team roster and on the student schedule. The fact that a substitute teacher was in the English teacher position on my team...I also stated that this whole situation was at an administrative level above my role and referred him to the principal, Mr. Berkel...."

    The remaining chronologically arranged documents stand probative of the fraudulent constructive discharge of my successful teaching contract of twenty years with the defendants in both state and federal courts. Then Corporation Counsel Marjorie Wilder went so far as to offer me fifteen thousand dollars if I would drop my federal court complaint inclusive of administrative perjurious testimony before the C.G.S. Sec. 10-151 advisory-only arbitration panel and the verbal and physical assault and battery upon me by a West Hartford Public Schools' administrator causative

-1-

of a third aneurysmal anomaly of the brain which rendered me temporarily legally blind. This offer was made moments after a Superior Court meeting in chambers with Senior Judge Jerry Wagner. I, of course, refused the offer. The appended May 26, 2004 "Breach of Contract Salary Losses To Date" totals over one million dollars to date plus punitive, compensatory, attorneys', medical fees, and foreclosure upon my home per collusion between the assailant's attorney and the condominium assosiation attorneys as I lay recuperating from the aforementioned brain surgery in a Simsbury nursing facility. Principal Beaudry's March 6, 1987, "Message" to Dr. Moore is libelous from start to finish. Since when may a teacher not change her bulletin boards? Paragraphs two and three are likewise libelous as I so stated before the arbitration panel. A then Spanish teacher at King Philip Middle School, Laura Sandi, has told me that Jean Martin, English Department Chair and author of the January 14, 1986 appended evaluation of my instructional and conference skills, told her in spring 1987, "We're trying to get rid of Sue Searles."

The West Hartford Education Association (WHEA) had taken my case of administrative harassment to grievance during July 1986. The conclusion of said grievance was succinctly stated by WHEA President Brian Fitzgerald in the appended August 25, 1986, letter to Associate Superintendent of Schools Lloyd Calvert, "...The Association is encouraged in your remedy to the situation by assigning Sue Searles at the first opportunity to a high school position ...." My October 28, 1986 letter of thanks to Brian records my seniority over thirty-one other English teachers inclusive of the one who obtained my pre-surgical high school position at Conard HS. A mere twenty-two days later on November 19, 1986 then Superintendent of Schools Peter Relic stated to me in his office that he would see to it that my tenured contract be terminated because I had filed a CCHRO/EEOC complaint against his administration for violation of the WHEA Agreement with West Hartford Board of Education.

Dr. Moore's "Summary of Meeting" on January 14, 1987 "..to develop a climate among all parties such that the balance of the school year (1987) can progress smoothly and without incident..." is self-explanatory. A mere seven weeks later Principal Beaudry banished me from the building for no reason or explanation. Said deus ex machina trembled visibly during her perjurious testimony before the videotaped arbitration hearings in 1988-1989.

-2-

The present WHPS Human Resources Director, one Timothy Dunn, is as dishonest as was Dr. Moore in colluding with Assistant Corporation Counsel Elizabeth Dee Bailey (Mrs. John M. Bailey) in denying the December 14, 1994 physical battery of Suzanne Mersereau Searles in a West Hartford grocery store and the outright lies conveyed by the assailant to the West Hartford police officer detailed to the attack scene by Searles's 911 call. This same individual in January 1991 concocted slanderous statements to the West Hartford police concerning Searles's kindness in returning a recently-found bookroom key to King Philip Middle School where the assailant then served as vice-principal. Please see the appended June 6, 2000 document addressed to CCHRO.

The only physician/neurologist who testified before the arbitration hearings for the Board of Education was one, Edward J. Fredericks, M.D. The appended November 12, 1987 document from Attorney Christopher C. Sheehan's "File" records the truth of his statements to Dr. Moore in March 1987 regarding Suzanne M. Searles's medical status:

> ...I asked Dr. Fredericks if he was
> backing off his earlier conclusion
> that Sue Searles is permanently dis-
> abled and unlikely to recover. He
> said that she would be able to per-
> form in the classroom and he stated
> the same to Jim Moore eight months
> ago. The obvious question is why he
> diagnosed her as permanently dis-
> abled in the meantime. Perhaps it
> was for the insurance so that Sue would
> have something on which to live.

Per Rules of Federal Procedure 60(b)(6) this federal court complaint inclusive of manipulative, intimidating, fraudulent, arbitrary, constructive termination of contract may be reopened at any time. Barely surviving on food stamps, state and town social services, and SSI payments of $564./month since expiration of the long term disability insurance payments four years ago, plaintiff pro se in forma pauperis hereby notifies all parties of her continued pursuit of justice in Connecticut state and federal courts. Truth, ethical integrity, and excellent health so mandate. In addition to ~~~ for federal exhibits of U.S. District Court Complaint No. 2:90-626, 3:97-02601 exhibits, and 3:001115 exhibits, plaintiff herein appends the May 30, 2000 psychological evaluation authorized by

-3-

Administrative Law Judge Bruce H. Zwecker of the Social Security
Administration:

> ...On the WAIS-III, Suzanne obtained a
> VIQ of 133 (ninety-ninth percentile),
> a PIQ of 116 (eighty-sixth percen-
> tile), and an FSIQ of 128 (ninety-
> seventh percentile)...

> VIQ=verbal IQ
> PIQ=performance IQ
> FSIQ=full scale IQ

> She said that a radiologist at the
> Dartmouth Hitchcock Hospital told
> her in 1997 that her new headaches
> were due to having been hit in the
> head in a supermarket in 1994...

> She was also very angry because of
> what she considers to have been dis-
> crimination against her because of
> her history of aneurysms...

> I was provided with a substantial
> medical file regarding her history
> of neurological issues.  My find-
> ings were not inconsistent with
> those records.  Although she may
> have had significant neurological
> deficits in the past, there was no
> evidence in this examination that
> they exist currently...

Judge Zwecker's July 19, 2000 "Decision" states, "Dr. Hamerof
stated that the claimant should be able to function in most work
environments and could certainly continue to function as a teacher,
as the claimant herself stated."

Very truly yours,

Suzanne M. Mersereau Searles

cc: United States District Court, New Haven
    Hartford Superior Court
    Workers' Compensation Commission
    CT Department of Social Services
    Avon Department of Social Services
    West Hartford Corporation Counsel
    United States Department of Justice, Civil Rights Division
    Hon. Governor M. Jodi Rell
    Reverend Jonathan Morgan, First Church of Christ, Simsbury, CT
    Paul Edouard Mersereau, Esq.

# WEST HARTFORD PUBLIC SCHOOLS
### MEMORANDUM

T. Ex #
(149)

TO: Sue

FROM: Connie

DATE: 10/10/85

Just want you to know I enjoyed the few minute
I spent in your class today. I saw good interest
interest on the part of your students, vocabulary
taught in a relevant way. You used past learn
in creating an anticipatory set for today's story -
straight out of instructional theory and skillfully
practiced!

Form 100

Jan. 14, 198

Sue,
        Thank you for the opportun.
to visit your class. I enjoyed
it. I especially liked the punctuate.
exercise! I would like to borrow
it. That kind of work is needed
for all students.
        I was so impressed with
your conferences! I would like
to borrow the techniques you
used. Everything was so smooth,
pleasant and structured. The
students responded to your strong
support in such a positive way.
You had that certain touch that
made each student feel good about
his/her writing. I can see why
the compositions were so good.
Would you mind sharing your
techniques with other teachers?
        Thanks also for allowing
me to sit with you as you

held conferences. I know that isn't easy!

I hope you'll invite me again. I enjoyed your class an. I enjoyed watching my "old" friends.

Thanks again for your support.

Sincerely,

Jean

# WEST HARTFORD EDUCATION ASSOCIATION

## 361 PARK ROAD

### WEST HARTFORD, CONN. 06119

August 25, 1986

Mr. Lloyd Calvert, Associate Superintendent
West Hartford Public Schools
211 Steele Road
West Hartford, CT  06117

Re:  Suzanne Searles Grievance

Dear Lloyd:

The Association chooses not to advance this grievance beyond the Board of Education level (as indicated in the Agreement between W.H.E.A. and the Board of Education, 1986-1988, Article VI, 6.2,B,(2)).

The Association is encouraged in your remedy to the situation by assigning Sue Searles at the first opportunity to a high school position.

Sincerely,

Brian R. Fitzgerald
President

BRF:blm

cc:  Suzanne Searles



(112)

King Philip Middle School
100 King Philip Drive
West Hartford, Conn.   06117
October 28, 1986

Mr. Brian Fitzgerald, President
West Hartford Education Association
361 Park Road
West Hartford, Conn.   06119

Dear Brian:

I am writing this letter to thank you for returning my
telephone call to you two weeks ago.  During our conversation
last Friday, October 24, 1986, you stated that Dr. James J.
Moore had recently told you that I would indeed be transferred
to a full-time high school English position in the near future.
Needless to say, this information delighted me in light of the
grievance of this past summer.  As you will recall, Brian, at
Level II of said grievance, Mr. Lloyd Calvert directed Jim
Moore to assign me to the next English high school teaching
position.

As you also will recall, I have seniority, tenure, and
banding - thirty-one English teachers in West Hartford are
below me in banding - ; I helped write the freshman English
curriculum during the summer of 1973, a curriculum which is
still extant at Conard High School; and the agreement between
Dr. Moore and my neurologist at Dartmouth where the second
craniotomy was performed in 1984 was that I successfully complete
one year of teaching at the middle school before returning to
the high school context.  The latter was accomplished on June 19,
1986.  Because two full-time English positions at Conard were
awarded to three teachers, one untenured and the other two
with less seniority than I, I went to grievance,  Need I say more.

Should a position open during the current academic year,
I wish to be assigned to the position.  If not, the State of
Connecticut Civil Rights Commission and a Hartford law firm are
prepared to take my case to federal court.

Tnank you again for your assiduous efforts in my behalf.

Very truly yours,

Suzanne M. Searles

cc: Dr. James J. Moore
    Dr. Peter Relic

# West Hartford Public Schools
211 Steele Road, West Hartford, Connecticut 06117 Telephone (203) 236-6081

To:     Suzanne Searles

From:   James J. Moore, Director of Personnel Services

Date:   January 21, 1987

Re:     Summary of Meeting Wednesday, January 14, 1987

Meeting Date:   January 14, 1987

Present:        Suzanne Searles, Constance Beaudry, Paul Berkel,
                Brian Fitzgerald, Jean Martin, James Moore

Purpose:    1. to discuss (air) issues or incidents involving
               Sue Searles at King Philip Middle School, and

               (a) principal        - Constance Beaudry
               (b) vice-principal   - Paul Berkel
               (c) department head  - Jean Martin

            2. to attempt to resolve these issues,

            3. to develop a climate among all parties such
               that the balance of the school year (1987)
               can progress smoothly and without incident.

## Issues Presented

1. **Assignment to King Philip Middle School** - both parties agree
   that the following statement has been made ...."been nothing
   but trouble at King Philip."  There is disagreement, however,
   as to who originated the statement.

2. **Field Trip - Chaperone - May, 1987** - all events, issues, state-
   ments, and counter statements surrounding this event were dis-
   cussed. There is no disagreement between the parties over
   basic facts.  However, there is disagreement over the intent
   of the teacher (Sue Searles) in requesting permission not to
   accompany students on this field trip.

3. **Reading Materials** - there was a discussion relative to the
   availability, use, and appropriateness (to curriculum) of
   selected reading materials.

4. **Future Assignment** - the statements made by Lloyd Calvert
   (Associate Superintendent) at grievance hearing relative to
   conditions for placing Sue Searles in a high school assign-
   ment were reviewed.

5. <u>Letter of Reprimand</u> - a letter of reprimand from the principal (Constance Beaudry) to Sue Searles with a copy inserted in the personnel folder of Sue Searles was discussed. The procedures for gaining the removal of the document from the personnel folder were reviewed.

<u>Summary</u>

1. The teacher (Sue Searles) and the Principal (Constance Beaudry) agree that the first preference of the teacher is to be placed in a high school English assignment.

2. The teacher (Sue Searles) stated she was pleased with her present assignment at King Philip Middle School.

3. The principal (Constance Beaudry) stated her desire to have Sue's assignment to King Philip and their relationship be open, positive, and productive.

4. It was concluded that there are ample and productive materials available for Sue to conduct her classes for the balance of the 1987 school year.

5. It was concluded that if a full-time "true vacancy" occurred in English at the high school level, Sue Searles would receive first consideration. However, a transfer from her present assignment at King Philip during this current school year is unlikely, because of the disruption it would cause to King Philip. Ms. Searles would be given consideration and preference for a high school English assignment in the next school year, provided her 1987-88 preference form reflects this preference. 

6. This meeting, January 14, 1987, was to provide ample opportunity for all parties to state issues and concerns or to respond to issues and concerns. Participants were charged to "begin anew" on January 15, 1987, to achieve a successful second half of the school year.

<u>Recommendations</u>

1. That all parties maintain the "good faith" discussion attitude displayed on January 14, 1987.

2. That resolution of any difference of opinion, or concerns should be attempted first at the school level.

3. That if it is reported to Sue Searles by another teacher that the principal has made some comment, that all parties involved in reporting comments made by the principal referring to Sue, be brought together immediately for a conference with the principal.

Page 3
Suzanne Searles
January 21, 1987

4. It was concluded that a meeting be scheduled in early June of
   '87 to determine the status of the letter of reprimand (May 23.)
   Attending this meeting will be Suzanne Searles, Brian Fitzgerald,
   Constance Beaudry, and James Moore.


JJM:mf
cc: Constance Beaudry
    Brian Fitzgerald
    Paul Berkel
    Jean Martin

To: JJM

From: Mary

Subject: Message from Connie Beaudry
2:30 p.m.

Date: 3/6/87

Connie Beaudry said that Ron Duncan saw Sue
~~Searles back at school late yesterday afternoon~~
taking posters down from her wall.

Sue was back at school this morning at 6:30 a.m.
~~and took all the posters off the wall and left.~~
Some of the youngsters who have her for a techer
were in the building because of music practice
and they saw her. She told them she was leaving
and wouldn't be back until May.

~~Incidentally, she called Cynthia last evening~~
and requested that she get a substitute for
her for today.

Connie said she does not want her to return
to her classroom on Monday if she does show
up. In fact, she is going to insist that she
accompany Connie to this office to see you.

Connie has been in touch with Mickey Lawler
and she will substitute beginning Monday.

# West Hartford Public Schools

211 Steele Road, West Hartford, Connecticut 06117 Telephone (203) 236-6081

May 22, 1987

Ms. Suzanne Searles
34 River Meadow
Avon, CT

Dear Sue:

Please be aware that I have contacted Dr. Fredericks and we
have decided that you should not return to full-time teaching
for the balance of this school year (1986-1987).

The decisions relative to the appointment of Instructional
Leaders for English will be made public on Tuesday, May 26th.
At this writing, I do not have a true full vacancy in English
at either high school.

However, I am aware of your request for a high school assign-
ment and your concern to know this assignment as soon as
possible, so that you can determine the location of your
living arrangements.

Sincerely yours,

James J. Moore
Director of Pesonnel Services

JJM:mf

To:      Dr. James Moore
         Director of Personnel Services
From:    Philip Hall, Team Leader
Re:      Suzanne Searles Communications
Date:    9/15/87

The following communications have been received by me from Sue Searles since Sept. 1, 1987.

1. On Sept. 1 Mrs. Searles telephoned me at my house requesting me to explain what was happening. My response was to the effect that all I knew was that I had been assured a teacher would be in homeroom and in the English classes the next day, Sept. 2nd.  I stated that I wished I knew what was happening and perhaps she should be the one to tell me. She stated she didn't know and was still in New Hampshire.

2. At 5:20 p.m. on Sept. 10, Mrs. Searles called my home asking for me. My wife talked with her stating that I was not yet home and could she take a message. Mrs. Searles said, "This is Sue Searles and I'm in New Hampshire and I haven't talked with him in 2 years.  I remember......your son in school and he was a nice boy.  I liked him a lot.  My wife responded, "Thank you.  We like him a lot too.  We're going out for dinner tonight." Mrs. Searles asked when she could reach me.  My wife stated we'd be back about 8 o'clock if she'd care to call.
   Mrs. Searles did not call back at any time after we returned from dinner shortly before 8:00 p.m.

3. At 5:34 p.m. on Sept. 10, an attorney called stating that he represented a Mrs. Suzanne Searles and requested that I answer some questions. I consented.  The ensuing conversation centered around 3 areas as I recall.

   1. The name of Searles did in fact appear on my team roster and on the student schedule.

   2. The fact that a substitute teacher was in the English teacher position on my team.  I also stated that the teacher was a certified English teacher who had taught and substituted in this school and was, to the best of my knowledge, serving as a substitute teacher at the present time.

   3. I also stated that this whole situation was at an administrative level above my role and referred him to the principal, Mr. Berkel.

RECEIVED

SEP 15 1987

DIRECTOR OF PERSONNEL
WEST HARTFORD PUBLIC SCHOOLS

not in 14107.A

TO:        File

FROM:      CCS

DATE:      11/12/87

RE:        Suzanne Searles

This morning I spoke with Dr. Fredericks, our client's Hartford
neurologist. Dr. Fredericks stated that he had just seen Sue
Searles earlier this week. It was the first night he had seen
her in quite a few months. He said that he didn't do any
examinations on her, but just spoke with her for awhile. Our
client looked good emotionally according to Dr. Fredericks
although she was still verbose and went off on tangents. Dr.
Fredericks told her that it would probably be better for her to
wait until next year to apply for a job at the high school level.
His recommendation to me was to try to emphasize her classroom
performance rather than her interpersonal quirks. Dr.
Fredericks told our client that he was in an awkward situation
because he had stated that she was permanently disabled, so
perhaps it would be better for him to lie low for awhile. I
asked Dr. Fredericks if he was backing off from his earlier
conclusion that Sue Searles is permanently disabled and unlikely
to recover. He said that she would be able to perform in the
classroom and he stated the same to Jim Moore eight months ago.
The obvious question is why he diagnosed her as permanently
disabled in the meantime. Perhaps it was for the insurance so
that Sue would have something on which to live.

Page 2    Re: Suzanne Searles    SSN: 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

Rochester, New York, at the age of two and a half. His father blamed himself, started drinking, and later battered Suzanne. She was remarried in 1979 to a chemist.

Suzanne's speech was rapid, and I was not able to slow her down. She reported that following her aneurysm she had had to learn to walk and talk again. Her memory returned, and she thinks that it is complete. She feels that she has completely recovered and has been well for the past 13 years. She said that she is able to work and had received a teaching position in 1989. She applied for Social Security benefits because all of her medical benefits and her pension had been lost. She was knocked down by the administration and had felt battered and assaulted. She earned her second master's degree at Dartmouth in 1997. She said that a radiologist at the Dartmouth Hitchcock Hospital told her in 1997 that her new headaches were due to having been hit in the head in a supermarket in 1994. She reported that she has a permanent strabismus and double vision. She sent out 95 resumes, but all of them were refused. She is obsessed with her case and with the injustice she has suffered. She talked about it extensively.

On the WAIS-III, Suzanne obtained a VIQ of 133 (ninety-ninth percentile), a PIQ of 116 (eighty-sixth percentile), and an FSIQ of 128 (ninety-seventh percentile). Her subtest scores were:

## WECHSLER ADULT INTELLIGENCE SCALE - THIRD EDITION

| Verbal Subtests | Scaled Score | Performance Subtests | Scaled Score |
|---|---|---|---|
| Vocabulary | 18 | Picture Completion | 11 |
| Similarities | 13 | Digit Symbol-Coding | 12 |
| Arithmetic | 12 | Block Design | 13 |
| Digit Span | 12 | Matrix Reasoning | 12 |
| Information | 16 | Picture Arrangement | 14 |
| Comprehension | 18 | | |

All of her scores were average to above average, and some were in the high superior range.

Her Bender designs were of excellent quality. All were excellent reproductions of the originals. Her proportionality was superb. Her spatial organization was excellent. She reported that her memory is now excellent. When asked about residual losses as a result of her aneurysm, she said that her first cranial nerve was severed surgically, so she has no sense of smell, and that her third cranial nerve was also severed surgically, which caused diplopia and strabismus. She does not have aneurysm-related headaches. She reported no other instances of passing out or blacking out, no history of alcohol or drug abuse, and no history of psychological issues.

Page 3    Re: Suzanne Searles    SSN: 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

Her TAT responses were detailed and contained good thematic development but some overattentiveness to external details. There were no signs of a thought disorder or of a psychotic process.

DIAGNOSIS:

AXIS I:    Adjustment disorder, with anxious mood.

AXIS II:   None.

AXIS III:  Status post aneurysm.

AXIS IV:   Unemployment, financial strain, loss of a child, and history of marital issues.

AXIS V:    Global Assessment of Functioning = 70.

IMPRESSION:

The diagnostic impressions were based on the direct testing. I was provided with a substantial medical file regarding her history of neurological issues. My findings were not inconsistent with those records. Although she may have had significant neurological deficits in the past, there was no evidence in this examination that they exist currently. It might be that a more sensitive neuropsychological examination would reveal such deficits, but this examination did not. At the present time, the data indicates that she has the ability to perform routine and repetitive tasks and that she has the ability to manage her own money. She reported that she is unable to secure employment in her preferred field. There was no evidence in the records to suggest that she is not able to obtain other kinds of employment or employment in her chosen field. Her anxious condition, anger, and obsessive features might be issues in her job adjustment.

David F. Mantell, Ph.D.

BJP/PSI: 16331

# STATE OF CONNECTICUT

## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

SUZANNE M. SEARLES,                    :          CHRO No. 0010385
   Complainant                             :
                                   :
v.                                      :
                                   :
WEST HARTFORD BOARD                     :
OF EDUCATION,                           :
   Respondent                              :          JUNE 6, 2000

### ANSWER OF RESPONDENT

    1. My name is Suzanne M. Searles and I reside at 39 Old Farms Crossing, Avon. CT 06001.

    **ANSWER**: Admit.

    2. The Respondent is West Hartford Board of Education and several of its school personnel located at 28 South Main Street, West Hartford, CT 06107.

    **ANSWER**: Admit Respondent is West Hartford Board of Education. Deny remainder.

    3. The Respondent employs well over 15 employees.

    **ANSWER**: Admit.

    4. I was illegally terminated from my tenured-teacher position per fraudulent allegations of "permanent physical disability." I was hired by Respondent Board of Ed. in 1970, underwent two corrective brain surgeries in 1982 and 1984, returned to teaching in a middle school venue in

11151

violation of the "reasonable accommodation" proviso of the Rehabilitation Act in 1985 where I underwent daily harassment from school administrators especially after filing CHRO Complaint 8710115. The Superintendent of Schools said to me on 11-19-96, "We are going to terminate your contract because you filed a CHRO-EEOC complaint."

**ANSWER**: Deny in the particulars alleged. Mrs. Searles was terminated in 1990 by the Respondent for a medical disability after a hearing pursuant to the Teacher Tenure Act. See Exhibit 1, letter dated July 31, 1990 from West Hartford Board of Education to Suzanne Searles and certified copy of minutes of a special meeting of the West Hartford Board of Education and Exhibit 2, Findings and Recommendations of the impartial panel dated July 23, 1990. The decision was appealed to the Connecticut Superior Court and dismissed as time barred. See Exhibit 3 - Defendants' Memorandum In Opposition To Plaintiff's Motion To Proceed *In Forma Pauperis* dated May 2, 2000, and Attachments A and L. Respondent emphatically denies that termination was based on any other factors. Any complaint based on alleged conduct prior to October 12, 1999 is time barred. See Defenses.

5. On March 6, 1987 I was ordered not to return to teaching. My salary, medical insurance, and vested pension rights were ceased immediately.

**ANSWER**: Admit in part; deny in part. Mrs. Searles was terminated for medical reasons based on the report of her physician. See Answer to Paragraph 4 above.

6. On 5-22-87 the Personnel Director wrote to me that he would appise [sic] me imminently of my teaching assignment for 1987-88. He never did in spite of colleagues telling me that my name appeared on the faculty roster and on the students' schedules of the same middle school. I filed CHRO Complaint 8810299 on 5-17-88, and was officially terminated on 7-30-90.

**ANSWER**: Admit in part; deny in part. See Answer to Paragraph 4 above and Exhibit 4, denial of reconsideration request from CHRO dated January 9, 1991 and Finding of No Cause and Summary.

2