7. On 12-14-94 a school administrator in collusion with a then Asst. Supt. of Schools verbally assaulted and physically battered me in a West Htd. grocery store by ramming me with a grocery cart and knocking me to the floor before the assailant fled. Said attack caused further brain damage, breast damage, and a ripped diaphragm through which part of my stomach protrudes. I was rendered legally blind among other wounds inflicted by the criminal attack.

> **ANSWER**: Admit in part; deny in part. The Respondent denies each and every allegation related to any alleged conduct on the part of any of its employees alleged to have occurred on December 14, 1994. See Exhibit 3, Attachment L, Docket No. CV-95-0550103, Searles v. Schulman, Denial of Motion to Reopen, Berger, J. dated November 9, 1998, Searles v. Schulman, Order of Dismissal dated November 9, 1998 and Memorandum of Decision on Motion for Summary Judgment, Aurigema, J., June 30, 1997. Any complaint based on alleged conduct prior to October 12, 1999 is time barred. See Defenses.

8. During my convalescence from brain surgery #3, my home was foreclosed on fraudulently _via_ collusion between the defendants' attorney and the foreclosure attorney.

> **ANSWER**: Inasmuch as Mrs. Searles has not identified the individuals alleged to have colluded or the date on which the alleged conduct occurred, and in view of the fact that the Respondent since 1986 has had numerous attorneys representing it in numerous forums in which Mrs. Searles has brought claims, and because Mrs. Searles has not identified the date on which the surgery and her convalescence occurred, the Respondent has insufficient knowledge to admit or deny this allegation, other than to make a general denial that it has never authorized any of its attorneys to undertake any act that would provide the basis for a claim of collusion or a basis for a claim of fraud. Any complaint based on alleged conduct prior to October 12, 1999 is time barred. See Defenses.

9. Last year I applied for 95 teaching positions including three in West Hartford Public Schools. The latter were made on 8-8-99, 12-19-99, and 1-23-2000. Prospective employers among the 95 cited that West Htd. administrators had given me negative recommendations.

3

**ANSWER**:  Admit in part; deny in part.  The Respondent is unaware of any administrator in its employ giving any negative recommendation to any prospective employer of Mrs. Searles.  Any claim of discrimination based upon any alleged refusal to rehire by Mrs. Searles in order to gain reinstatement to a teaching position with the Respondent is time barred as another chance to challenge the Respondent's original employment decision in 1990.  See Exhibit 3, pp. 8-10.

10.  In July 1997 I filed for bankruptcy.  I now survive on welfare.

**ANSWER**:  The Respondent has insufficient knowledge to admit or deny this statement.

11.  In June 1997 I was awarded an M.A.L.S. degree by Dartmouth College where I had survived on student loans.  My major was British Lit.

**ANSWER**:  The Respondent has insufficient knowledge to admit or deny this statement.

12.  Retaliatory discrimination is forbidden per Robinson v. Shell Oil Co., a unanimous Supreme Court of the United States decision of 1997 and Cleveland v. Policy Mgt. Systems of May 24, 1999.

**ANSWER**:  The Respondent has insufficient knowledge to admit or deny this statement.

13.  U.S. District Court in Hartford has demanded that I obtain a CHRO/EEOC "right-to-sue letter" in order to proceed.

**ANSWER**:  The Respondent has insufficient knowledge to admit or deny this statement.

14.  My teachers' union, WHEA, filed a grievance against the Board of Ed. in June 1986 demanding that I be assigned to a high school teaching position as I had been prior to the first

4

two brain surgeries. The Sup't. of Schools mentioned in 4. <u>supra</u> was evidently angered by the Asst. Supt's. mandate that I be the next teacher assigned to a high school position.

> **ANSWER**: Admit in part; deny in part. Mrs. Searles was a member of the West Hartford Education Association while she was employed by the Respondent. The Respondent denies that any teacher assignment to any position has ever been made based upon anger. Any conduct that is alleged to have occurred on the part of the Respondent prior to October 12, 1999 is irrelevant to this complaint because it is beyond the period of the statute of limitations. <u>See Defenses</u>.

15. Not until the battery inflicted upon me by a West Hartford Board of Education employee requiring correction by both breast and further brain surgery was I rendered in any way "permanently physically disabled." I again have fully recovered.

> **ANSWER**: Admit in part; deny in part. <u>See Answer to Paragraph 4 above</u> and see Defenses.

16. I possess documentation of my applications to all teaching positions during the past thirteen years probative of retaliatory and criminal actions/words committed by my twenty-year employer, West Hartford Board of Education.

> **ANSWER**: The Respondent has insufficient knowledge to admit or deny this statement.

## DEFENSES

1. Any claims of a discriminatory practice based upon conduct alleged to have occurred prior to October 12, 1999 are time barred by the statute of limitations of one hundred and eighty (180) days for such claims. <u>See Section 46a-82 of the General Statutes</u>.

11151

5

*[handwritten: not per fraud]*

2. Any claims of a discriminatory practice based upon a refusal to rehire are time barred by any applicable statute of limitations because the termination of Mrs. Searles' employment occurred in 1990. See Exhibit 3, at pp. 8-10.

3. The Respondent's decision to terminate the teacher contract of Mrs. Searles was a business decision based upon a <u>bona fide</u> occupational qualification and was allowed under Section 10-151 of the General Statutes which provides that disability, as shown by competent medical evidence, is a proper reason for termination of a tenured teacher contract.

*[handwritten: he's "You're a superb teacher on 2-11-87]*

RESPONDENT
WEST HARTFORD BOARD OF EDUCATION

By _____

Timothy Dunn
Director of Human Resources
West Hartford Board of Education
28 South Main Street
West Hartford, CT 06107

11151

6

## OATH

STATE OF CONNECTICUT)

                  ) ss. West Hartford, CT    *May 22*    , 2000

COUNTY OF HARTFORD  )

      Personally appeared Timothy ~~Dunn~~, Director of Human Resources, West Hartford Board of Education, and made oath to the truth of the matter contained in the foregoing answer before me.

                                      _____
                                      ~~Notary Public~~/Commissioner of Superior Court
                                      My ~~Commission expires~~_____

## CERTIFICATION

      I hereby certify that I have served a copy of the enclosed documents by U.S. Mail on the Complainant named below on June 6, 2000:

Suzanne M. Searles
39 Old Farms Crossing
Avon, CT  06001

                                      _____
                Elizabeth Dee Bailey

7

NO. 028866

IN THE SUPREME COURT
OF THE
UNITED STATES OF AMERICA

SUZANNE M. SEARLES, PETITIONER

v.

TOWN OF WEST HARTFORD
BOARD OF EDUCATION, RESPONDENTS

PETITION FOR REHEARING

TO THE

UNITED STATES SUPREME COURT

FROM CONNECTICUT SUPREME COURT

IN HARTFORD, CONNECTICUT

Pro se in forma pauperis petitioner's numerous motions to vacate judgment under FRCP 60(b)(6) for defendants' fraud upon the court inclusive of perjury before an arbitration tribunal, state and federal courts, and two workers' compensation commission formal hearing officers have fallen victim to judicial indiscretion and negation. Preclusion of bona fide medical and academic exhibits of petitioner's excellent health post two neurosurgical procedures upon her brain together with bona fide defendants' school administrators' evaluations of her instructional skills post surgeries have been hidden from purview of all ruling parties for sixteen years and counting. Per Rule 60 (b)(6) plaintiff/appellant/complainant/petitioner is entitled to relief in the nature of "writ of coram nobis." (United States v. Alpine Land and Reservoir Co., 1991, DC Nev 769 F Supp 1142) Defendants remain culpable of Title VII, ADEA, ADA, and ERISA violations which protect employees from being wrongfully fired as well as verbally and physically abused post-termination as is the scenario in this court's Case No. 028866.

This Petition For Rehearing is filed pursuant to Rule 44. 2. in that "... its grounds shall be limited to intervening circumstances of a substantial or controlling effect or to other substantial grounds not previously presented..."

As recently as May 14, 2003, Connecticut judges voted to abolish the decades-old secret file system by approving comprehensive new practice rules effective July 1, 2003. (Exhibits A,B)

> It is hard to imagine anything that
> brings the administration of justice
> into disrepute more than abuse of
> the law by the judiciary...The world
> of judges and lawyers and attorneys
> general is clubbish, self-protecting
> and recriminatory...

(Exhibit B)

In the instant case before this court, the petitioner's particularized showing of extraordinary circumstances per Rule 60(b)(6) is copious, (McPartland v. American Broadcasting Cos. 1986, SD NY 113 FRD 84, 42 BNA FEP Cas 766), as are "intervening circumstances of a substantial or controlling effect...not previously presented..." Denied salary, pension, social security benefits, or any income other than SSI of $552./month, she has had to research case law and to duplicate her exhibits sealed from court purview while surviving on food stamps in subsidized housing.

Furthermore, while represented by incompetent counsel from September 30, 1990 through June 1992, plaintiff alerted the federal district court of such and, for the second time, said court ruled for court-appointed counsel as petitioner pursued graduate study at Dartmouth College in New Hampshire. The latter was in pursuit of a second M.A. degree in British literature and neuroscience to provide all parties and courts further proof of her cerebral competence post the aforementioned corrective brain surgeries. On May 1, 1995 CT Chief State's Attorney John Bailey stated by phone that he would appoint counsel for petitioner in the assault case aforementioned. Neither US District Court Judge Peter C. Dorsey nor Mr. Bailey ever honored their rulings/word. (Exhibits in toto to this Case No. 028866's Petition For Writ of Certiorari and Petition For Rehearing) Ergo, indigent petitioner has had to plead pro se in forma pauperis.

USCS Court Rules, Federal Rules of Civil Procedure, Lawyers' Edition, "Multidistrict Litigation Rules," Rules 60-End, states:

> Rule 60(b) recognizes court's inherent power to grant relief from judgment where court has been subjected to fraud and fraud upon court is matter which is so grave that relief is afforded without regard to any time limitations. Great Coastal Express, Inc. v. International Brotherhood of Teamsters, etc. (1980, ED Va) 86 FRD 131, 110 BNA LRRM 2052, 29 FR Serv 2d 1181, remanded without op (CA 4 Va) 639 F2d 780, later app (CA4 Va) 675 F2d 1349, 110 BNA LRRM 2058, 93 CCH LC 13447, 33 FR Serv 2d 1234, cert den 459 US 1128, 74 L Ed 2d 978, 103 S Ct 764, 112 BNA LRRM 2280, 95 CCH LC 13933.

(page 152)
(1987 edition)

Needless to say, during the past sixteen years, plaintiff/appellant/complainant/petitioner has apprised each ruling body of her victimization by her former employer's fabricated, perjurious testimony, suppression of bona fide exhibits and depositions, and pretextual slander and libel. Ergo, because plaintiff/complainant has indicated to each judge that "... his court has been victimized by fraud of winning party, it is well within his discretion to require moving party to make showing in support of its allegations before requiring prevailing party to submit second time to extensive discovery

-2-

to protect his judgment...." (Ibid. p. 152) This pro se litigant
has far more than cursorily made "... showing in support of its
allegations..." re defendants' malfeasance/fraud stated supra and
proven in each and every federal, state and workers' compensation
case filed during the past thirteen years. (H.K. Porter Co. v.
Goodyear Tire and Rubber Co. 1976, CA6 Ohio 536 F2d 1115, 191 USPQ
486, 21 FR Serv 2d 1429)

> Perjurious testimony suborned by
> party to litigation, affecting
> material matter, will, if estab-
> lished, support bill of review
> in equity when fraud had by this
> means been perpetrated on court.

(Ibid. p. 153)

(Jungersen v. Axel Bros., Inc. 1954, DC NY 121 F Supp 712, affd
per curiam CA2 NY 217 F2d 646, 104 USPQ 39, cert den 349 US 940,
99 L Ed 1267, 75 S Ct 784, 105 USPQ 517, reh den 350 US 868, 100
L Ed 769, 76 S Ct 99)  Emblematic of the following quotation, is
the fact that defendants' counsel in state court proceedings from
1990 to the present is none other than the wife of Chief State's
Attorney Bailey, Elizabeth Dee Bailey, who has gone so far in her
pretextual attempts to 'paint' this petitioner as "brain-injured"
as to announce to a court clerk that she (Mrs. Bailey) was afraid
to remain alone in court chambers with "Mrs. Searles" while Clerk
Heather xeroxed some of Searles's documents, already provided to
Mrs. Bailey by Mrs. Searles.  This was stated only moments after
Bailey slapped Searles's hand as the latter attempted to discern
which papers the former wanted copied!

> Fraud on court is typically confined
> to most egregious cases such as bri-
> bery of judge or juror, or improper
> influence exerted upon court by at-
> torney, in which integrity of court
> and its ability to function impar-
> tially is directly impinged...

(Ibid. p. 152)

> Generally only most egregious miscon-
> duct, such as bribery of judge or mem-
> bers of jury, or fabrication of evi-
> dence by party in which attorney is
> implicated, will constitute fraud on
> court under Rule 60(b), less egre-
> gious misconduct, such as nondisclosure
> to court of facts allegedly pertinent
> to matter before it...

(Ibid. p. 152)

At this juncture please see Exhibit C, #57: "Jury Says Bailey
Violated Rights - Millions Awarded To Officer Who Said He Was

-3-

Case 3:90-cv-00626-BCD to Document 166-2 Filed 08/31/2004 Page 10 of 30

Silenced. Analogues to the instant case are astounding.

A federal jury Wednesday awarded $2.7 million in damages to a state inspector who claimed that Chief State's Attorney John M. Bailey punished him for <u>blowing the whistle</u> on FBI misconduct.  In a stunning rebuke to Connecticut's top prosecutor, the jury discounted Bailey's sworn testimony and concluded that he had <u>willfully</u> <u>violated</u> <u>the free-speech rights</u> <u>of an employee</u>...Dillon's lawyer, Karen Lee Torre, said the damage award was unusually large for a free-speech case.  She called the verdict <u>a major victory</u> <u>for public employees</u> <u>who speak out about wrongdoing</u>...

> The Hartford Courant
> November 26, 1998
> (emphasis added)

"I feel vindicated," said Dillon, who had complained during trial that <u>Bailey had impugned his reputation</u>...

(Ibid.)
(emphasis added)

He ordered his inspectors to remain silent and he temporarily <u>transferred</u> Kumnick <u>to a distant</u> Litchfield <u>courthouse</u>, a move that Kumnick <u>viewed</u> <u>as punishment</u>.  Kumnick also was <u>threatened with arrest</u>, <u>though no action was taken</u>...

(Ibid.)
(emphasis added)

"It was bizzaro world," Kumnick recalled Wednesday.  "<u>I'm reporting a crime, and they are threatening to arrest me?</u>"

(Ibid.)
(emphasis added)

He also transferred Dillon to Litchfield for 120 days, <u>the longest involuntary transfer allowed under</u> the inspectors' contract...

(Ibid.)
(emphasis added)

The jury concluded that <u>Bailey's motive was retaliation</u>.  For that, they awarded Dillon $800,000 in compensatory damages and $1.5 in punitive damages...

(Ibid.)
(emphasis added)

Torre asked them (the jury) to make clear that <u>free speech is sacrosanct</u>.  "This is not Beijing.  This is not Cuba.  This is the United States..."

(Ibid.)

Phrases such as those underlined <u>supra</u> might very well appear in a news article descriptive of the obstruction of justice encountered by this litigant during the past sixteen years while in pursuit of her own constitutional, statutory rights of due process against the local "Bailey Bailiwick."  In addition to the foregoing Exhibit <u>C</u> #57, petitioner herein provides this Supreme Court with the two hundred nineteen other exhibits placed before the formal hearing officer which he fraudulently ignored during the formal hearing. Included therein are innumerable <u>bona fide</u> probative documents attesting to retaliatory acts and words of defendants inclusive of

-4-

administrative hostility, three involuntary transfers, verbal
and physical caveats, broken promises, and so on.  Said exhibits
are arranged in more or less reverse chronological order:

#206, June 5, 1975, petitioner's letter to then West Hartford
   Superintendent of Schools protesting the first of
   three (3) involuntary transfers

#203, June 19, 1975, "Conard Teacher Hits Transfers":

> The superintendent of schools and mem-
> bers of the Board of Education of West
> Hartford should be notified of the dis-
> may and shock of the Conard faculty
> concerning the arbitrary, capricious,
> and inequitable manner by which some
> transfers were made from the Conard
> faculty to the faculties of other schools
> ...
>
> > Charles H. Arnold, teacher
> > Conard High School

#202, July 20, 1975 edition of The Hartford Courant:

> Between 15 to 20 grievances have been
> raised-either formally or informally-
> in the last three years, more, accord-
> ing to the West Hartford Education
> Association (WHEA) and school officials,
> than in the past...In addition, five of
> those grievances-all filed within the
> past two years-have gone all the way to
> the board...They represent the first time
> ever that grievances have gone that far...   (emphasis added

#201, July 25, 1975, Superintendent of Schools to petitioner:

> The Board of Education met on July 24
> and deliberated at length before making
> a decision regarding your grievance in
> being transferred from Conard High School.
> Your sincere interest in doing a quality
> teaching job was most evident to the
> Board...Your interest in teaching at a
> higher and more sophisticated academic
> level was recognized and appreciated
> ...I am convinced that you will carry to
> the King Philip School your teaching
> expertise and that King Philip students
> will benefit from your service there....   (emphasis added

#200, July 26, 1975, The Hartford Courant; #199, August 5, 1975, The
West Hartford News:

> ...Donald LaCroix, WHEA president, contends
> the board wanted to embarrass the teachers
> and discourage others from bringing griev-
> ances.  He said the disclosure reflected
> badly on the teachers because of some cri-
> tical comments about them made by Asst.
> Supt. Donald Hardy in a Courant article
> two weeks before...LaCroix said he wants
> school officials to publicly apologize for

-5-

the error, to clarify in public that
the teachers discussed ..."are qualified
..."and to promise not to do that again
...."                                    (emphasis added)

#198 through #173; # 176, August 21, 1978, petitioner to
WHPS Director of Personnel:

> ...After an involuntary transfer from
> Conard to King Philip Junior High School
> in September 1975, a transfer which I
> protested but fulfilled, I made formal
> application for transfer back to Conard
> in a letter to Mr. Hedrick dated Nov-
> ember 28, 1975. I am now facing a sec-
> ond involuntary transfer, this time to
> Hall High School, which if fulfilled
> will verify that I have been assigned
> to four different schools in six school
> calendar years. Coupled with the above
> is the fact that I have never taught
> high school juniors and seniors which
> comprise the major component of the as-
> signment at Hall. Thus it is that I re-
> spectfully request consideration for as-
> signment to Conard High School....

                                         (emphasis added)

#202, July 20, 1975 edition of The Hartford Courant:

> LaCroix contends both cases are an example
> of age and sex discrimination in reverse
> because the board wants to keep a "balance"
> of teachers at various schools...
>
> ...The English teacher (Suzanne Mersereau
> Searles) who was transferred had taught 11
> years at the junior high level before going
> to the senior high when ninth graders were
> moved there temporarily two years ago.
> Hardy said he considered her not prepared
> to teach the required courses if she were
> to remain at the senior high without the
> ninth grades...

                                         (emphasis added)

The probative-of-discrimination documents/exhibits continue in
reverse chronological order from #201-166 replete with medical
exhibits of the severe stress-engendered headaches undiagnosed
until the ruptured cerebral aneurysm of June 21, 1982 which occurred
at the end of a teaching day at Conard High School to which petition-
er had been transferred in September 1979 after a full academic year
with no salary, workers' compensation benefits, or long term disabil-
ity insurance benefits. She survived on student loans pursuing two
graduate English courses at Trinity College and two graduate English
courses at Middlebury College's Bread Loaf School of English.

-6-

In short, in July 1975 defendants told the press that this teacher
was not prepared to teach in a high school without freshmen; in
August 1978 defendants assigned the teacher to instruct high school
juniors and seniors.  Rationale, let alone equity, has never been
defendants' 'strong suit.'  In addition, this teacher's first year
of teaching freshmen at King Philip School, 1975-1976, included
nearly identical class rosters to those assigned to her as juniors
and seniors at Hall High School in 1978-1979, the latter an assign-
ment originally given to a Mrs. Gromulski who, with the backing of
WHEA, had taken the assignment to grievance before defendant Board
because of its preponderance of behavioral and learning disabled
students.  Yes, indeed, coercive, retaliatory, intimidating discrim-
ination abounded in West Hartford Public Schools in the 1970's as
well as in the 1980's and 1990's and currently into the twenty-
first century in this petitioner's decades-long quest for profes-
sional equity and justice.

In 1985, <u>post</u> complete recovery from two neurosurgical proce-
dures performed in 1982 and 1984 for excision of two cerebral an-
eurysms, the first of which had ruptured, the teacher received a
third involuntary transfer from Conard High School to King Philip
Middle School to team-teach eighth grade English.  Said completely-
foreign-to-petitioner format stood in blatant violation of the
"reasonable accommodation" proviso of the 1973 Sec. 504 Rehabilita-
tion Act as amended in 1978.  Nonetheless, she performed competently
as proven in the only extant three administrative full-period evalu-
ations of her teaching expertise during September 1985 through
March 5, 1987, the last day defendants permitted her to teach.
(Exhibits <u>D</u>, <u>E</u>, <u>F</u>)  Victimized by defendant malfeasance once again
<u>sans</u> salary as throughout academic year 1978-1979, the teacher
sought counsel from the Connecticut Education Association (CEA).
Statutory "impartial arbitration tribunal" hearings were held through-
out 1988-1989, but Findings and Recommendations, advisory only, were
not issued until July 23, 1990, and Defendant Board met in ' special
session one week later to the day.  Denial of WHEA and the teacher's
contractual right to due process re submission of tribunal-denied
competent medical evidence, constructive discharge of the nineteen
years and six months tenured-teaching contract was consummated
(Exhibits #121-180) fraudulently and pejoratively by Defendant
Board.

548 F2d 505.

The foregoing applies to CEA Attorney William Dolan who 'sold out this twenty-five-year-dues-paying member of CEA's interests to the other side' at the eleventh hour in March 1990 as well as to Igor I. Sikorsky, Jr., Esq., whom plaintiff had paid a twenty thousand dollar retainer in September 1990 only to have him drop her state court Case No. 90-0384053 sans either consulatation or permission of his client who was pursuing graduate study in New Hampshire as mentioned supra. Mr. Sikorsky likewise reneged on his agreement to fight the district court ruling granting defendants' summary judgment motion. (Appendices to this Petition For Certiorari and Petition For Rehearing in toto):

> Where it has been shown that, after district court made its findings, conclusions, and entered injunction, crucial witness had committed perjury, district court commits reversible error in continuing to credit witness's testimony without inquiring into extent of perjury and granting new trial or other relief. Phillips v. Crown Cent. Petroleum Corp. (1977 CA 4) 556 F2d 702, 1977-1 CCH Trade Cases 61377, later app (CA 4 Md) 602 F2d 616, 1979-2 CCH Trade Cases 62743, cert den 444 US 1074, 62 L Ed 2d 756, 100 S Ct 1021.
>
> (USCS Court Rules, Rules 60-End, 1987, p. 153)
> (emphasis added)

"Construction and application of provision of Rule 60(b) of Federal Rules of Civil Procedure that Rule does not limit power of Federal District Court to set aside judgment for "fraud upon the court." 19 ALR Fed 761. (Annotation, Ibid. p. 152)

"Perjury by nonparty witness must be dealt with pursuant to Rule 60(b)(6)..." Lester v. Empire Fire and Marine Ins. Co. (1980, ED Mo) 87 FRD 466, 30 FR Serv 2d 1395, affd (CA 8 Mo) 653 F2d 353, 31 FR Serv 2d 1669. (Ibid. p. 153)

> While attorney should represent his client with singular loyalty, such loyalty does not demand that he act dishonestly or fraudulently; on contrary, attorney's loyalty to court, as officer thereof, demands integrity and honesty in dealing with court, and when he departs from such standard in conduct of case, he perpetrates fraud upon court. Kupferman v. Consolidated Research and Mfg. Corp. (1972 CA2 NY) 459 F2d 1072, 16 FR Serv 2d 160, 19 ALR Fed 747.

-9-

Since attorneys are officers of court,
their allegedly dishonest conduct invol-
ving misrepresentation and perjury would
constitute fraud upon the court. H.K.
Porter Co. v. Goodyear Tire and Rubber
Co. (1976 CA 6 Ohio) 536 F2d 1115, 191
USPQ 481, 21 FR Serv 2d 1429.

(Ibid. p. 155)
(emphasis added)

The foregoing is cited in reference not only to then plaintiff's
attorneys Dolan and Sikorsky but also to defendants' numerous
attorneys inclusive of Elizabeth Dee Bailey, Marjorie Wilder, Susan
Krell, and Elizabeth Gilson each of whom stands guilty of egregious
outright slander, libel, and fraud. (Mrs. Bailey serves as West Hart-
ford Assistant Corporation Counsel; Mrs. Wilder served as Corporation
Counsel for West Hartford; Ms. Krell represented defendants in both
state and federal court; Ms. Gilson represented defendants before J.
Purtill in Hartford Superior Court).

Exceptional circumstances, in addition to the foregoing, abound
in the instant case before this court re defendants' violation of CT
Gen. Statute 31-290a in addition to negation of Title VII, ADEA,
ADA, and ERISA provisions encoded in Hartford Superior Court Case No.
90-0384053, No. 95-0550103, No. 97-0479375; CT Appellate Court Case
No. 13880, No. 20853, No. 14107, No. 22028, 19075; US District Court
Case No. 2:90-626 (PCD), No. 3:97-02601 (PCD), No. 3:00-CV-1116 (PCD),
3:97-MC-462 (TPS); and USCA Second Circuit Court No. 92-7912, No. 95-
9184, No. 96-9675, Nos. 98-9133, and No. 01-7007. Petitioner retains
copies of each file under lock and key. Because defendants in all
cases fraudulently ceased petitioner's salary, vested pension rights,
and insurances sixteen years ago and counting and because of her
abiding faith in this country's advocacy of justice for all its citi-
zens, she has pursued her meritorious claims in all the aforementioned
court venues as well as in this United States Supreme Court Case Num-
bers 94-6673, 98-2669, and the instant Case No. 028866. On July 23,
1990, pro se plaintiff filed her original federal complaint replete
with 167 exhibits. On August 27, 1990 she filed her state court com-
plaint of illegal tenured contract termination in Hartford Superior
Court well within thirty days of CT Gen. Statute Sec. 10-151, et seq.
provisos. Numerous exhibits of plaintiff's excellent health were
appended thereto which negate the defendants' July 30, 1990 special
session ruling of "permanent physical disability." The federal
complaint fell victim to summary judgment which Mr. Sikorsky did not
appeal. Defendants' state court Motion To Preclude medical exhibits
likewise fell victim to judicial indiscretion as did said state claim
in toto as mentioned supra. (Exhibit G)

-10-

Supreme Court include the verbal assault and physical battery of
plaintiff in Superior Court Case No. 95-0550103 which has never been
adjudicated because of the injuries inflicted by Defendant Schulman
and resultant thoracic, brain, and visual injuries which rendered
pro se plaintiff temporarily legally blind.  The trial took place
as plaintiff lay recuperating in a local nursing home post brain
surgery at Mass. Gen. Hospital in Boston for excision of two more
cerebral aneurysms at the apex of the basilar artery which were not
present between 1984 and July 15, 1997.  Plaintiff's Motion For
Continuance was denied by said court.

"Other substantial grounds not previously presented" include
the 220 exhibits placed by complainant/petitioner before Workers'
Compensation Commissioner Walker in the instant case.  As stated
in Case No. 028866 Petition For Writ Of Certiorari, said commission-
er/hearing officer would not admit or even peruse any of said ex-
hibits of the decades'-long employer harassment/discrimination of
complainant detailed supra.  (Exhibit C)

This court reversed and remanded pro se public school teacher
Ann Mery Charlton's case to the district court in Charlton v. Para-
mus Board of Education, Supreme Court Case No. 93-5498, which was
submitted under Third Circuit LAR 34.1(a) on December 23, 1993 and
decided on June 1, 1994.  The ruling stated:

> ...for it (the district court) to
> consider the sole issue of Charl-
> ton's claim that the Paramus School
> Board sought to have her teaching
> certificate revoked in retaliation
> for her filing of a Title VII suit
> ....

(25 Fed.R. 3d 202)

As discussed supra, Petitioner Searles has endured twenty-eight
years and counting of employer discriminatory harassment inclusive
of caveats of trespassing charges if she ever again sets foot on
school grounds.  The physical battery of her person took place on
12-14-94, just three months before this court's March 20, 1995 de-
nial of her Petition For Rehearing her Petition For Writ of Certior-
ari in Case No. 94-6673 which was docketed on July 28, 1994.  This
petitioner's attempts to obtain other employment have fallen on deaf
ears:

> The local school board's lack of direct
> authority or responsibility for the cer-
> tification decision does not seem to us

-11-

> lation. If an employer who does not
> actually make the subsequent employment
> decisions is liable under Title VII <u>if
> he "blacklists" a former employee for
> that employee's exercise of Title VII
> rights, a school board can also be lia-
> ble if it has a retaliatory motive</u> for
> an attempt to jump start or influence
> state administrative proceedings to re-
> voke Charlton's professional certifica-
> tion. The absence of local regulatory
> authority over the revocation decision
> is not dispositive...Accordingly, <u>we
> conclude that Charlton is not barred
> from pursuing a Title VII claim merely
> because she was not an employee at the
> time her former employer potentially
> acted to interfere with her prospects
> of future employment</u>...
>
> (Ibid. p. 202)<br>(emphasis added)

As stated in this court's Case No. 94-6673 as well as in Case No.
028866, the instant case, Searles has been "blacklisted" by defen-
dants for sixteen years and counting in her attempts to procure an-
other teaching position as confirmed by prospective employers dur-
ing interviews. The latter confide that defendants egregiously and
fraudulently state that this applicant has a post-surgical memory
deficit, rambling speech patterns, emotional instability, and ina-
bility to teach competently. (Please see Exh. <u>C</u> # 32, 37, 39, 42, 48,
105, 111, 134, 135, 138, 146-149, 155, 158, 159, 160, <u>D</u>, <u>E</u>, and <u>F</u>).

Exhibit <u>G</u> contains the transcript of the July 25, 1991 Hart-
ford Superior Court trial:

> Your Honor will note that <u>there are</u>, what,
> <u>three documents that are under seal</u>. We
> have stated before, Your Honor, that <u>this
> Court has authority under</u>, I guess it's
> Subsection of the basic statute--<u>Subsec-
> tion f of the basic statute states</u> that
> the--"<u>Any party to the appeal</u>"--that is
> where we are now--"<u>may introduce evidence
> in addition to the contents of the trans-
> cript, if it appears to the Court that ad-
> ditional testimony</u>,"--"<u>is necessary for the
> equitable</u>--and I think "testimony" is equi-
> valent to "evidence,"--"is necessary for
> the equitable disposition of the appeal,"
> <u>we would ask this Court to</u> exercise its
> equitable right to <u>unseal</u> those envelopes,
> and <u>review the medical testimony because
> of the fact that we're honing in on the is-
> sue of competent medical evidence. And those
> documents have been sealed and not really
> part of the record</u> at the moment before Your
> Honor. <u>We're asking Your Honor to</u>

-12-

take those documents under consideration
in the ruling...

> (Igor I. Sikorsky, Jr.,
> Esq., pp. 30-31)
> (emphasis added)

Judge Purtill's fraudulent ruling of July 31, 1991 - dismissal of
the appeal - follows the trial transcript.

As Exhibits <u>A</u> and <u>B</u> explain, as of July 1, 2003, the <u>sealing</u>
<u>of civil case files</u> will cease in Connecticut courts:

> Anonymous, <u>sealed</u> and sometimes entirely
> <u>hidden case files had been permitted</u>
> <u>since 1980 to spare a select few from</u>
> <u>public embarrassment, but this arcane</u>
> <u>secret file "solution" created more em-</u>
> <u>barrassment for the courts than it elim-</u>
> <u>inated...Federal lawsuits</u> filed by The
> Hartford Courant and The Connecticut
> Law Tribune, which first revealed the
> existence of Level I cases, <u>seek an open</u>
> <u>accounting for those still-secret cases</u>
> ...

> ("Secret Files Abolished By Judges,
> Connecticut Law Tribune, week of
> May 19, 2003)
> (emphasis added)

Said ruling should indeed end the paradigm of judicial indiscretion
in the courts of the state of Connecticut.  In the instant case the
defendants' machinatious claim of untimely filing in Hartford
Superior Court on "August 27, 1990" will forever cease as is proven
in the final fourteen pages of Exhibit <u>G</u> by the stamp of the court
clerk, the Affidavit of the Deputy Sheriff Albenie Gagnon, and the
provisos of C.G.S. Sec. 52-593a:

> No cause or right of action shall be lost
> because of the passage of the time limit-
> ed by law within which such action may be
> brought if the process to be served is
> personally delivered to the office of any
> sheriff within the time limited by law,
> and such process is served, as provided
> by law, within fifteen days of such deliv-
> ery.  In any such case the officer making
> such service shall endorse under oath on
> his return the date of delivery of such
> process to him for service in accordance
> with this section....

> (Exhibit G)

Returning to the federal court venue, petitioner refers this
court to its ruling in <u>Tye</u> <u>v.</u> <u>Polaris Joint Vocational School Dis-</u>
<u>trict</u>, 811 F.2d 315 (6th Cir. 1987), in which a public school board
of education terminated a female guidance counselor's contract on
pretextual grounds in violation of Civil Rights Act of 1964, Sec.
701 et seq., 42 U.S.C.A. Sec. 2000e et seq.  Reversal and remand

-13-

were granted Ann Tye, another victim of intentional discrimination,
as was this petitioner who was told by the then West Hartford Super-
intendent of Schools, Peter Relic, on November 19, 1986 that because
she had filed CCHRO/EEOC complaints against his administration she
had placed her employer and herself in an adversarial position and
that he would personally see to it that her contract be terminated.
(CCHRO is CT Commission on Human Rights and Opportunities). His words
were uttered three and one-half months <u>post</u> the July 1986 grievance
at which conclusion this petitioner was promised by Defendant Board
that she would be the next English teacher assigned to a West Hart-
ford high school full-time teaching position. Just over three months
later this teacher was constructively discharged/evicted from her
seventeen-year-tenured-teaching position.

> The proper procedure for adjudication of
> Title VII claims is set forth by the Su-
> preme Court cases of <u>McDonnell Douglas</u> <u>v.</u>
> <u>Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.
> Ed. 2d 668 (1973), and <u>Texas Dept. of Com-</u>
> <u>munity Affairs v. Burdine</u>, 450 U.S. 248,
> 101 S.Ct. 1089, 67 L.Ed. 2d 207 (1981).
> On appeal, we review factual findings of
> the District Court under the "clearly er-
> roneous" standard set forth in Rule 52(a)
> of the F.R.C.P...The basic issue here is
> whether an emplyer may prevail when he
> stipulated to untrue reasons given to re-
> but a <u>prima</u> <u>facie</u> case and then refuses
> to give any coherent and understandable
> reason-subjective or objective-for an em-
> ployment decision covered by Title VII...

(<u>Tye v. Polaris</u>,
p. 317)

"If the employer fails to carry this burden, the plaintiff is en-
titled to judgment as a matter of law." <u>Burdine</u>, 450 U.S. at 254, 101
S.CT. at 1094." (<u>Tye v. Polaris</u>, p. 318) Exceptional circumstances
in the instant case include defendants' and their attorneys' collusion
with the state judiciary and West Hartford Police Department who, dis-
patched to the scene of the 12-14-94 battery by Petitioner Searles's
911 call, refused to arrest or even reprimand the assailant school ad-
ministrator. Instead, they of the Bailey Bailiwick chose to believe
the blatantly slanderous and fraudulent statements made to them by
the assailant. (Exhibit <u>H</u>)

   This Supreme Court's June 4, 2001 unanimous ruling in <u>Pollard v.</u>
<u>duPont deNemours and Co.</u>, Case No. 00-763, 213 F.3d 933, captures
the thrust of this petitioner's pleas for justice:

> In the Civil Rights Act of 1991, Congress
> determined that victims of employment dis-

-14-

remedies...to deter unlawful harassment
and intentional discrimination in the
workplace...that the remedies newly auth-
orized under Sec. 1981a were <u>in addition
to</u> the relief authorized by Sec. 706(g)
...As to front pay awards that are made
in lieu of reinstatement, we construe
Sec. 706(g) as authorizing these awards
as well...We see no logical difference
between front pay awards made when there
eventually is reinstatement and those made
when there is not. Moreover, to distinguish
between the two cases would lead to the
strange result that employees could re-
ceive front pay when reinstatement even-
tually is available but not when rein-
statement is not an option -whether because
of continuing hostility...or because of
psychological injuries that the discrim-
ation has caused the plaintiff. Thus, the
most egregious offenders could be subject
to the least sanctions...We conclude that
front pay awards in lieu of reinstatement
fit within this statutory term...Congress
sought to expand the available remedies
by permitting the recovery of compensatory
and punitive damages in addition to pre-
viously available remedies, such as front
pay. The judgment of the Court of Appeals
is reversed and the case is remanded for
further proceedings consistent with this
opinion. It is so ordered....

(<u>Pollard</u> <u>v</u>. <u>duPont de
Nemours and Co</u>.,p. 4)

For all the factual and legal grounds enumerated in her
original Case No. 028866 Petition For Writ Of Certiorari and those
cited in this Petition For Rehearing, this <u>prima</u> <u>facie</u> case of
intentional and pretextual discrimination merits reversal and
remand.

Respectfully submitted,

_____

Suzanne M. Searles, <u>pro
se</u> <u>in</u> <u>forma</u> <u>pauperis</u>
petitioner

-15-

**PROOF OF SERVICE**

     I, Suzanne Sibley Mersereau Searles, do swear that on this date, June 9, 2003, pursuant to Supreme Court Rules 29.3 and 29.4, I have served the attached PETITION FOR REHEARING inclusive of its APPENDIX on each and every party to the aforementioned proceeding, or that party's counsel, and on every other person required to be served by depositing an envelope containing the enclosed documents in the United States mail properly addressed to each of them with first-class postage prepaid.

     The names and addresses of those served are as follows:

        West Hartford Corporation Counsel
        50 South Main Street
        West Hartford, CT   06107

                    Suzanne Sibley Mersereau
                    Searles, pro se ifp
                    petitioner

Subscribed and Sworn to Before Me
this _____ day of June 2003

Notary Public in and for said
County and State

NO. 02-8866

IN THE SUPREME COURT

OF THE

UNITED STATES OF AMERICA

SUZANNE M. SEARLES, PETITIONER

v.

TOWN OF WEST HARTFORD BOARD OF EDUCATION,

RESPONDENTS

PETITION FOR REHEARING ADDENDUM

TO THE

UNITED STATES SUPREME COURT

FROM CONNECTICUT SUPREME COURT

IN HARTFORD, CONNECTICUT

RECEIVED

JUN 3 0 2003

OFFICE OF THE CLERK
SUPREME COURT, U.S.

Petitioner files this Motion For Rehearing Addendum pursuant to Rule 21.1. in that this Court's unanimous decision in Desert Palace, Inc. DBA Caesars Palace Hotel and Casino v. Costa, No. 02-679, was decided on the very day, June 9, 2003, that the instant Petition For Rehearing, No. 02-8866, was mailed to this Court. The two cases stand analogous relative to circumstantial and direct evidence of disparate treatment rendered an employee by employer as probative of intentional discrimination:

> We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." Id., at 147 The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, n. 17 (1957).

539 U.S. ___ (2003)
(emphasis added)

Because of defendants'/respondents' intentional and retaliatory treatment of petitioner as far back as July 1975, both local and statewide teachers' unions' counselors, as well as teaching colleagues, advised her to maintain a 'paper trail' of evidence. As all courts well know, this she has done. As argued in both the instant Petition For Writ Of Certiorari and Petition For Rehearing replete with Appendices of exhibits probative of respondents' pretextual, "mixed-motive" violations of Title VII of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. Sec. 2000e, et seq.; Age Discrimination in Employment Act (ADEA); Americans With Disabilities Act of 1990, 42 U.S.C. 12111 et seq.; ERISA; Connecticut General Statutes Sec. 10-151 and Sec. 31-290a; the gravamen of the aforementioned Petitions in Case No. 02-8866 is definitively proven and should be upheld by this Court and merit remand.

Following is a succinctly-stated, chronological outline of the aforementioned disparate treatment, intentional discrimination, perjurious testimony relative to permanent disability, and retaliatory constructive discharge of tenured teaching contract:

-1-

(All exhibits referenced are from the Appendix to this Petition
For Rehearing unless otherwise designated).

Exhibit

C#195-207 "...Between 15 to 20 grievances have been raised...in
the last three years, more, according to the West Hart-
ford Education Association (WHEA) and school officials
than in the past. In addition, five of those grievances
- all filed within the past two years - have gone all
the way to the board. Two will be heard this week.
They represent the first time ever that grievances have
gone that far...In the past, he (WHEA President LaCroix)
contends many teachers tried to work out problems inform-
ally and were promised solutions that never materialized
...The two transfer grievances the board will hear this
week involve Conard teachers who have been reassigned to
junior high schools. LaCroix contends both cases are an
example of age and sex discrimination in reverse because
the board wants to keep a balance of teachers at various
schools..."

                              The Hartford Courant, July
                              20, 1975, #202 (emphasis added)

C#159-161 "In no way are we saying this is not an excellent teacher
...It does not mean that she is not a highly qualified
teacher, we recognize that. It does not mean that her
interest in teaching at the high school will be ignored.
It will not. It must not...I do not know for a fact but
we have here a person of considerable integrity. I do
not question that in her mind and in her heart she probab-
ly would have preferred to resume at the high school level
because it is where she was when regretably she had to
leave active employment because of her disability...If
there is anything for which this party might hold us cul-
pable in the future it would be were we to ignore her in-
terest when the opportunity presented itself..."

                              #159, pp. 8-9, July 30, 1986
                              Associate Superintendent of
                              Schools Calvert (emphasis added)

C#158     "I am writing in behalf of Suzanne Searles. As you may
know, she suffered a subarachnoid hemorrage and required
clipping of a left middle cerebral artery aneurysm in
1982. More recently she underwent a craiotomy for coating (sic)
(excision) of an asymptomatic right middle cerebral artery
aneurysm. It would be beneficial if she could teach at
the high school level where her course load would not be
as great and stress factors less..."

                              Edward J. Fredericks, M.D.
                              to WHEA President Fitzgerald,
                              August 6, 1986 (emphasis added)

C#156     "The Association (WHEA) chooses not to advance this griev-
ance beyond the Board of Education level...The Association
is encouraged in your remedy to the situation by assigning
Sue Searles at the first opportunity to a high school
position...."

                              Mr. Fitzgerald to Associate
                              Superintendent Calvert, August
                              25, 1986 (emphasis added)

                        -2-

Petition For Rehearing,            ...then Superintendent of Schools,
p. 14                              Peter Relic, on November 19, 1986
                                   ..." told this petitioner "...that
                                   because she had filed CCHRO/EEOC
                                   complaints against his administration
                                   she had placed her employer and her-
                                   self in an adversarial position and
                                   that he would personally see to it
                                   that her contract be terminated..."

Needless to even say, on-the-job hostility, harassment, and false
accusations escalated at the middle school on the part of said
school's administrators towards this petitioner from 11-19-86 to
3-6-87, the day that the principal of said middle school forbade
the teacher to continue her teaching assignment.

C#155-154    Director of Personnel Services, James J. Moore's
             "Summary of meeting Wednesday, January 14, 1987"

             "Purpose: 1. to discuss (air) issues or incidents
              involving Sue Searles at King Philip Middle School,
              and (a) principal - Constance Beaudry
                    (b) vice-principal - Paul Berkel
                    (c) department head - Jean Martin
                      2. to attempt to resolve these issues
                      3. to develop a climate among all parties
                         such that the balance of the school year
                         (1987) can progress smoothly and without
                         incident..."
                                              (emphasis added)

C# 150-154   "To: JJM (James J. Moore)...
             Subject: Message from Connie Beaudry 2:30 p.m.
             Date: 3/6/87...
             Connie said she does not want her to return to her
             classroom on Monday if she does show up. In fact,
             she is going to insist that she accompany Connie
             to this office to see you. Connie has been in touch
             with Mickey Lawler and she will substitute begin-
             ning Monday...."
                                       #155 (emphasis added)

C#147        "King Philip Middle" (School) 1987-88 faculty roster
             with Suzanne Searles's name lined out

C#148        Team Leader Philip Hall's memo. to Dr. James Moore
             dated "9/15/87"..."3. At 5:34 p.m. on Sept. 10, an
             attorney called stating that he represented a Mrs.
             Suzanne Searles and requested that I answer some
             questions. I consented. The ensuing conversation
             centered around 3 areas as I recall...
             1. The name of Searles did in fact appear on my team
             roster and on the student schedule.
             3. I also stated that this whole situation was at an
                administrative level above my role and referred him
                to the principal, Mr. Berkel....
                                              (emphasis added)

C#145        Petitioner's then attorney Christopher Sheehan's
             file memo. of 11/12/87: "...He (Dr. Fredericks) said
             that she would be able to perform in the classroom and
             he stated the same to Jim Moore eight months ago..."
                                              (emphasis added)

-3-

C# 1-FTE  February 26, 1988  to Suzanne Searles, Post Office Box
726, Hanover, New Hampshire 03755

Dear Mrs. Searles: This is to inform you that the West
Hartford Board of Education, at its meeting Thursday,
February 25, 1988, voted to consider terminating your
contract of employment.  Very truly yours, Lloyd Calvert
Superintendent....'"

Additional direct and circumstantial evidence of mixed-
motive disparate treatment and broken promises abounds in the
Appendices in toto to this Petition For Rehearing, in the "sealed"-
by-respondents' competent medical evaluations of petitioner's
post-surgical excellent health, and of the physical attack upon her
person by a respondent school administrator on December 14, 1994.

-4-

## CERTIFICATE

Pro se ifp Petitioner Suzanne M. Searles hereby certifies that, pursuant to this Court's Rule 44., this Petition For Rehearing Addendum is presented in good faith and not for delay. Furthermore, its grounds are "...limited to <u>intervening circum-stances</u> <u>of</u> <u>a</u> <u>substantial</u> <u>or</u> <u>controlling</u> <u>effect</u> <u>or</u> <u>to</u> <u>other</u> <u>sub-stantial</u> <u>grounds</u> <u>not</u> <u>previously</u> <u>presented</u>..." (emphasis added)

Suzanne M. Searles

## PROOF OF SERVICE

I, Suzanne Mersereau Searles, do swear that on this date, June 16, 2003, pursuant to this Court's Rules 29.3 and 29.4, I have served the attached Petition For Rehearing Addendum on each and every party to the aforementioned proceeding, or to that party's counsel, and on every other person required to be served by depositing an envelope containing the enclosed document in the United States mail properly addressed to each of them with first-class postage prepaid.

The names and addresses of those served are as follows:

West Hartford Corporation Counsel
50 South Main Street
West Hartford, CT  06107

                                    _____
                                    Suzanne Sibley Mersereau
                                    Searles, pro se ifp
                                    Petitioner

Subscribed and sworn to Before Me
this _16TH_ day of June 2003
_____
Notary Public in and for said
County of Hartford, State of Connecticut

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, D. C. 20543

August 25, 2003

Ms. Suzanne M. Searles
45 Whispering Pines
Avon,   CT 06001


        Re:  Suzanne M. Searles
             v. Town of West Hartford Board of Education
             No.  02-8866


Dear Ms. Searles:

    The Court today entered the following order in the above
entitled case:

    The petition for rehearing is denied.

                        Sincerely,

                        William K Suter
                    William K. Suter, Clerk