UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SUZANNE MERSEREAU SEARLES, Plaintiff     CIVIL NO. 2:90-626 (PCD)
  pro se in forma pauperis            3:97-02601 (PCD)
  v.                             3:00-1115 (PCD)
WEST HARTFORD BOARD OF EDUCATION,     SEPTEMBER 11, 2004
  ET AL., Defendants

ADDENDUM TO
MOTION TO TRANSFER TO ORIGINAL VENUE
AND FOR RELIEF FROM JUDGMENT

Plaintiff herein moves for this court's acceptance of the three appended documents/exhibits received since the filing of "Motion To Transfer To Original Venue And For Relief From Judgment" in that said documents from State Department of Social Services Office of Hearings and Appeals comprise further definitive evidence of "extraordinary circumstances" per FRCP 60(b)(6) mandating "relief from judgment" in each one of the cited cases.

In short, not only was plaintiff constructively and fraudulently discharged from her nineteen-year-six month tenured teaching contract with defendants but was also verbally abused and physically battered by defendant school administrator Schulman necessitating a third brain corrective surgery in 1997 in addition to breast and abdominal surgery for remediation of injuries inflicted. Again she/plaintiff has fully recovered. As proven in Case Numbers 3:97-02601 and 3:00-1115 admitted collusion between the assailant's attorney and plaintiff's condominium homeowners' association attorneys culminated in fraudulent foreclosure upon the victim's home as she recuperated from said third brain surgery in a local nursing facility. With no income other than disability insurance, she was discharged from said facility after one month and had to reside in four motels and thence to a one-bedroom apartment.

Now she is faced with no food stamps for one year in violation of Department of Social Services own Uniform Policy Manual provisos. (See appended June 23, 2004 letter). Seventeen years, 1987-2004, of "extraordinary circumstances" emblematic of defendants' fraud, as well as that of State Department of Social Servies, in "sealing"/sequestering meritorious exhibits of plaintiff's excellent health, instructional expertise, and professional demeanor have left plaintiff penniless and homeless. Now she will have no food either.

-1-

As of February 11, 2000, sixty-five-year-old plaintiff no longer qualified for insurance income of sixty per cent of her 1986-1987 salary agreement with defendants. She applied for social security disability income but was denied same in Judge Zwecker's June 2000 ruling as three consulting physicians found no rationale, medical or other, why she should not be reinstated by Defendant Board of Education. CT Workers' Compensation Commission stress claims were likewise fraudulently rejected as were all applications for teaching positions statewide. (C.G.S. Sec. 30-290a, Reinstatement and Reimbursement)

> ...Circumstances which actually prevent a party from protecting his own interests would seem from the cases to be a sure ground for relief under Rule 60(b)(6). A party's disability in some respect, such as <u>illness</u>... <u>or</u> his absence because of <u>lack of funds</u>... <u>or otherwise without fault of his own, represent extraordinary circumstances which warrant relief under Rule 60(b)(6)</u> "<u>to accomplish justice</u>"...
>
> <u>Federal Rules of Civil Procedure</u>, Lawyers' Edition, <u>United States Code Service</u>, Rules 60-End, p. 239, 1995.
>
> (emphasis added)

The Second Circuit Court of Appeals in <u>United States v. Karahalias</u>, 1953, CA 2 NY, 205 F2d 331, ruled as follows in defendant's motion to open judgment seventeen years later, the same tenure as this plaintiff's meritorious plea:

> ...the Court of Appeals remanded the case to grant the motion, saying that defendant's failure to act sooner was not neglect at all, but had resulted from forcible obstacles imposed on his defense, so that his inaction came within the "any other reason" clause of Rule 60(b)(6) to which no fixed time limit applied....
>
> <u>Ibid.</u>, p. 239, "Relief From Final Jv

For all the aforementioned reasons and those presented in the original August 24, 2004, motion and the entirety of plaintiff's pleadings in all three cited cases before Judge Dorsey, justice and truth must prevail.

Respectfully submitted,

Suzanne Mersereau Searles

-2-

## CERTIFICATION

Plaintiff hereby certifies that a copy of this motion was this day, 11 September 2004, either mailed prepaid or hand-delivered to opposing counsel, <u>et al.</u>:

> West Hartford Corporation Counsel
> 50 South Main Street
> West Hartford, CT   06107
>
> Sack, Spector, and Karsten
> 836 Farmington Avenue
> West Hartford, CT   06119
>
> Rosenberg and Rosenberg
> 920 Farmington Avenue
> West Hartford, CT   06107
>
> U.S. Department of Justice, Civil Rights Division, Employment
>          Litigation Section - EEOC Charge No. 16AA01228
>
> CCHRO Director - Case No. 0018385
>
> Hartford Superior Court - Case Numbers CV90-0384053 and
>                                     CV95-0550103
>
> New Britain Superior Court - Case Number CV97-0479375
>
> Workers' Compensation Commission - Claim No. 6010210406
>
> Attorney General Richard Blumenthal
>
> Honorable Governor M. Jodi Rell
>
> CT Department of Social Services, Office of Administrative
>          Hearings
>
> Paul E. Mersereau, Esq., Drew and Mersereau, Avon, CT
>
> Reverend Jonathan Morgan, First Church of Christ, Simsbury, CT
>
> Geoffrey Sager, Property Mgt. LLC, Farmington, CT

Suzanne Mersereau Searles

-3-

<u>NOTA</u> <u>BENE</u>: The enclosed documents are arranged in reverse alphabetical order for ease of access.

45 Whispering Pines
Avon, CT   06001
June 23, 2004

Luz Velez
Department of Social Services
Office of Administrative Hearings
25 Sigourney Street
Hartford, CT   06106-5033

Dear Ms. Velez:

The enclosed exhibits, in addition to those presented at the June 16, 2004 hearing, further refute DSS's fraudulent allegations that I stole funds from my mother, Dorothy C. Mersereau, in order to both aid her survival in a corrupt nursing/convalescent facility and to myself survive following a physical and verbal assault/battery upon me by a West Hartford Public Schools' administrator.  The then Bristol Office of DSS wrongfully denied me my rightful allotment of both food stamps and cash assistance monthly as these documents prove, in addition to Exhibits <u>A</u> through <u>Y</u> presented at the aforementioned hearing.

First, my mother never suffered from "dementia" and Alzeimers" as stated by Investigator Newton at said hearing.  She remained fully competent mentally to her dying day, October 30, 2002 ~~and~~ at age ninety-seven.  The proof of the foregoing statement:

Statement of Findings:
1. Resident #1 with <u>diagnoses including Hypertension, Congestive Heart Failure</u> and <u>history of Arthritis</u> had an annual assessment (MDS) dated 3/6/01 that identified <u>no memory problems</u> and modified cognition in new situations only...

July 16, 2001 State of CT Department of Public Health investigational report p. 3 (emphasis added)

On May 31, 2001 my mother both verbalized and placed in writing the enclosed exhibit which states:

To Whom It May Conern: I, Dorothy C. Mersereau, hereby authorize payments from my pension to GE Capital Auto Lease, Inc. and to the Hartford Insurance Co. prior to payments to other sources....

-1-

enclosure which states/quotes relevant passages from <u>Paying For Nursing Home Care With Medicaid</u> (Title XIX) on pp. 1 and 2.

At the bottom of these documents/exhibits are pages from the <u>Uniform Policy Manual</u> and "Long Care Issues and Medicaid" documenting the <u>legality of a trust established by a parent for an adult disabled child</u> which again refute Mr. Newton's fraudulent allegations regarding the age of said child.

Furthermore, "Long Term Issues and Medicaid" clearly states under "Excluded Assets":

> H. 1. For all applicants except an applicant with a MCCA spouse, one motor vehicle is totally excluded if the applicant or the applicant's spouse:
>
> > a. Needs the motor vehicle for employment; or
> >
> > b. needs the motor vehicle for the medical treatment of a specific or ongoing medical problem...
>
> C. <u>Transfers to a Disabled Child</u>
>
> An individual may transfer assets of any type without penalty to his or her child who is considered to be blind or disabled under the Department's criteria... p. 14
>
> FAIR HEARINGS: 2.b. If this need for a higher income is due to exceptional circumstances resulting in significant financial duress including, but not limited to, the financial burden of caring for a disabled child,, p. 18

<u>Uniform Policy Manual</u>; Section 3028.10 C. Transfers To A Disabled Child, states the above almost identically as encoded in the enclosed pages regarding "Trusts" inclusive of all the enclosed pages regarding trusts and Section 3028.11 E. "Undue Hardship."

The remainder of both the enclosed exhibits and those entered at the hearing are self-explanatory. Yes, this child of Dorothy C. Mersereau is both "permanently physically disabled" and "legally blind" as alleged by the corrupt West Hartford Board of Education, its administrators, and state courts.

Very truly yours,

Suzanne M. Searles

cc: Robley Newton
    Avon Department of Social Services
    Paul E, Mersereau, Esq.

-2-

**STATE OF CONNECTICUT**
**DEPARTMENT OF SOCIAL SERVICES**
**OFFICE OF LEGAL COUNSEL, REGULATIONS**
**AND ADMINISTRATIVE HEARINGS**
**25 SIGOURNEY STREET**
**HARTFORD, CT  06106-5033**

August 31, 2004
CERTIFIED MAIL

CLIENT ID #1404192

## NOTICE OF DECISION

## PARTY

**Ms. Suzanne Searles**
45 Whispering Pines
Avon, CT 06001

## REASON FOR HEARING

On May 10, 2004, the Appellant, Suzanne Searles requested an administrative hearing because she was dissatisfied with the amount of State Supplement.  A hearing was held on June 16, 2004 in accordance with Connecticut General Statutes § 17b-60, 17b-61 and § 4-176e to § 4-184.

## PRESENT AT THE HEARING

Suzanne Searles, Appellant
Colleen Hudson, For the Department
Luz Velez, Hearing Officer

## STATEMENT OF ISSUE

The issue is whether the Appellant is receiving the correct State Supplement benefit.

## FINDINGS OF FACT

1.  The Appellant is a recipient of State Supplement benefits.  (Hearing Summary)

2.  The Appellant has unearned income of $564.00 (SSI) per month. (Ex. 3/4 CAFI screen )

3.  Effective November 1, 2003, the Appellant rent is $285.00 per month.  (Appellant's testimony)

4. The Appellant lives in non-rated housing. [UPM § 4520.15(A)]

5. The Appellant lives alone in her own apartment. (Appellant's testimony)

6. The Appellant lives in Level 2 Housing. [UPM § 4520.15(C)]

7. For State Supplement purposes the Appellant's maximum rent allowed for Level 1 Housing is her actual rent of $285.00. [UPM § 4520.15(C)(b)]

8. The Appellant's basic needs are $449.10, ($285.00, maximum rent allowed; plus $164.10, personal needs standard). [UPM § 4520.15(B); 4520.05(B)]

9. The Appellant does not receive meals on wheels. (Appellant's testimony)

10. The Appellant does not have a therapeutic diet. (Appellant's testimony) [UPM § 4525.10; § 4525.60 and § 4525.35(b)(1)]

11. The Appellant has applied income of $381.00, ($564.00, unearned income; minus $183.00, standard disregard). [UPM § 5045.10; 5030.15(B)]

12. The Department is recouping an overpayment from the Appellant's State Supplement cash assistance. The recoupment rate was 20% of the standard disregard of $183.00 or $36.60 per month. The recoupment has been in effect since at least September 2003. (Ex. 3 3/04 CAFI screen, Ex. 6 Case Narrative entry dated 3/11/04)

13. The Appellant's rent is $50.5% of her SSI income, ($285.00 rent, divided by $564.00 times 100). (See Facts # 2, 3)

14. On March 11, 2004, the Department reviewed the recoupment rate and found that due to a change in the Appellant's rent the recoupment rate should be based on 15% of the standard disregard or $27.00. (Ex. 6) [UPM § 7035.20(C)(2)]

15. Effective April 1, 2004, the Department increased the Appellant's changed the recoupment amount to $27.00 per month and increased the cash benefit from $31.40 to $41.00 per month. (Ex. 4 4/04 CAFI screen)

## CONCLUSIONS OF LAW

Section 17b-2 of the Connecticut General Statutes authorizes the Commissioner of the Department of Social Services to administer the Aid to the Aged, Blind, and Disabled (AABD) State Supplement program.

UPM § 4520.15(A) provides that individuals living in the following types of housing are classified as residing in non-rated housing: (a) home owned property; (b) rented living arrangements; (c)

room, including a hotel or motel room; (d) room and board in a housing unit that is not a licensed boarding facility; (e) all other housing that is not classified as a rated housing facility.

UPM § 4520.15(B)(1) provides that the personal needs standard for assistance units residing in non-rated housing contains a cost allowance for the following expenses: clothing, cooking fuel, electricity, food, heat, hot water, household supplies, laundry, personal incidentals, telephone, transportation.

UPM § 4520.15(B)(2) provides that the standard of assistance for personal needs for assistance units residing in non-rated housing is $164.10 per month.

UPM § 4520.15(C)(1) provides that an individual is considered to be living in Level 1 housing in the following situations: (1) he or she is living in commercial housing or in a Department of Mental Health (DMH) sanctioned supervised apartment and not sharing a bedroom with any other individual; (2) he or she is living in a shelter for the homeless or for battered women; (3) he or she is living in any type of housing not mentioned in (1) and (2) above, and is not sharing his or her bedroom, bathroom or kitchen with another individual.

UPM § 4520.15(C)(1)(b) provides that the standard of assistance for shelter for assistance units living in Level 1 housing is the amount that the assistance unit is obligated to pay for housing, up to $400.00 per month. This includes rent, mortgage principal and interest, fire insurance premiums, property taxes, and water bills.

UPM § 5030.15(A) provides that unearned income disregards are subtracted from the unit member's total gross monthly unearned income as follows:

(B)(1)(a) Standard Disregard: the disregard is $183.00 for those individuals who reside in their own homes in the community or who live as roomers in the homes of others and those who reside in long term care facilities, shelters for the homeless or battered women shelters;

UPM § 6005(B)(2) addresses the issuance of benefits in the AABD program and states in part that:

   a. When the assistance unit member is not considered to be living with a spouse, the benefit amount resulting from the comparison of the applied income to the total needs is paid in total to the applicant or recipient.

UPM § 7035.20 (A) provides that when the Department recoups, the amount of the monthly recoupment is based on the cause of the overpayment, and in certain situations may depend on factors such as the assistance unit's income and shelter costs.

Per UPM 7035.20(B)(2) for overpayments caused by unintentional recipient error the Department recoups at a monthly rate not to exceed 20% of the assistance unit's disregarded income.

UPM § 7035.20(C)(2) provides in part that if the assistance unit's monthly shelter costs not paid by the Department are equal to or greater than 30% of the unit's gross monthly income, the rate of

recoupment is reduced as follows: by 5% if the shelter costs are at least 50% but less 55% of the gross monthly income.

***Based on the Findings of Fact, Discussion, and regulations set out in this decision, it is concluded, as a matter of law, that the Appellant is entitled to a monthly State Supplement benefit of $41.00 ($449.10, basic need; minus $381.00, applied income; minus $27.00 recoupment).***

## DISCUSSION

In accordance with the regulations governing the State Supplement program, the Appellant has basic needs of $449.10. This figure represents her current rental obligation of $285.00 per month, plus the standard of assistance for personal needs for assistance units residing in non-rated housing of $164.10 per month. The State Supplement benefit to which the Appellant is entitled is the difference between her total needs and her applied income of $381.00 ($564.00 SSI, minus $183.00, which is disregarded in computing the amount of income that is available). The resulting benefit is then reduced by $27.00 due to the recoupment of an overpayment.

With respect to the rate of recoupment, in accordance with UPM § 7035.20(C)(2) the Department correctly computed the rate of recoupment as 15% of the unearned income disregard of $183.00. As the Appellant's rental expense is greater than 30% of her income, the previous rate of 20% rate is reduced, as provided in the regulations by 5% to 15%. When the Department adjusted the rate of recoupment, the Appellant's benefit actually increased to $41.00. Based on her needs as provided for by the regulations, her income and the recoupment in progress, the Appellant is not entitled to any additional State Supplement cash benefits at this time.

## DECISION

The Appellant's appeal is **DENIED**.

Luz Vélez
Hearing Officer

pc: Silvana Flattery, Regional Administrator, Northern Region, Hartford

## RIGHT TO REQUEST RECONSIDERATION

The appellant has the right to file a written reconsideration request within **15 days** of the mailing date of the decision on the grounds there was an error of fact or law, new evidence has been discovered or other good cause exists. If the request for reconsideration is granted, the appellant will be notified within 25 days of the request date. No response within **25 days** means that the request for reconsideration has been denied. The right to request a reconsideration is based on §4-181a(a) of the Connecticut General Statutes.

Reconsideration requests should include specific grounds for the request: for example, indicate what error of fact or law, what new evidence, or what other good cause exists.

Reconsideration requests should be sent to: Department of Social Services, Director, Office of Legal Counsel, Regulations and Administrative Hearings, 55 West Main Street, Meriden, CT 06451.

## RIGHT TO APPEAL

The appellant has the right to appeal this decision to Superior Court within **45 days** of the mailing of this decision. Even if a reconsideration has been requested, there are still only **45** days to file an appeal. The right to appeal is based on §4-183 of the Connecticut General Statutes. To appeal, a petition must be filed at Superior Court. A copy of the petition must be served upon the Office of the Attorney General, 55 Elm Street, Hartford, CT 06106 or the Commissioner of the Department of Social Services, 25 Sigourney Street, Hartford, CT 06106. A copy of the petition must also be served on all parties to the hearing.

The **45** day appeal period may be extended in certain instances if there is good cause. The extension request must be filed with the Commissioner of the Department of Social Services in writing no later than **90** days from the mailing of the decision. Good cause circumstances are evaluated by the Commissioner or her designee in accordance with §17b-61 of the Connecticut General Statutes. The Agency's decision to grant an extension is final and is not subject to review or appeal.

The appeal should be filed with the clerk of the Superior Court in the Judicial District of New Britain or the Judicial District in which the appellant resides.

STATE OF CONNECTICUT
DEPARTMENT OF SOCIAL SERVICES
OFFICE OF LEGAL COUNSEL, REGULATIONS
AND ADMINISTRATIVE HEARINGS
25 SIGOURNEY STREET
HARTFORD, CT 06106-5033

Suzanne Searles,                            }
    Defendant                        }
                                     }
    v.                               }
                                     }
DEPARTMENT OF SOCIAL SERVICES,   }
    Department                       }


RE:    Administrative Disqualification Hearing Held on June 16, 2004


## RULING ON MOTION TO ENTER EXHIBITS


### Background

During the Administrative Disqualification Hearing held on June 16, 2004, the Defendant requested that documents labeled exhibits A through Y from a previous administrative hearing, be entered into the record as her exhibits. An objection was raised by the Department's representative, as to the relevance of these exhibits to the case before the hearing officer. The hearing officer deferred a ruling on the acceptance or rejection of said exhibits, until such time as the documents could be reviewed and their relevance to the issue at hand could be determined.


### Findings of Fact and Discussion

I have reviewed all of the documents presented during the hearing, as well one additional packet received on June 25, 2004, while the record of the hearing remained open for additional submissions from the Department. I find that with the exception of the items listed below, the information contained in the Defendant's submission is not relevant to the issue of this hearing. Due to the volume of information, each item not entered into the record will not be listed herein.

The only issue to be addressed during the Administrative Disqualification Hearing (ADH) was, whether the Defendant committed an intentional program violation of the Food Stamp program, by failing to report income received from her mother. Much of the information contained in the

Suzanne Searles
v.
Department of Social Services
September 7, 2004
Page 2

*[handwritten: Ergo, the medical need for a car]*

Defendant's submission deals with previous administrative hearings, appeals of other issues to various courts, the Defendant's medical condition and doctor's appointments, correspondence with various individuals or other matters which are not the subject of this hearing.

Section 4-178 of the Connecticut General Statutes addresses evidence in a contested case and states in part that: "(1) any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence". The section also states that: "(8) the agency's experience, technical competence and specialized knowledge may be used in the evaluation of the evidence".

The following are the documents, which the hearing officer in accordance with the cited state statute, finds are relevant to the issue. These items have been entered into the record and marked as follows:

| | |
|---|---|
| Exhibit A | Listing of all cash and Food Stamp assistance for the 1999 to 2003 |
| Exhibit B | Lease Credit Application dated April 12, 2000 |
| Exhibit C | Motor Vehicle Lease Agreement dated 4/20/00 signed by Paul Mersereau POA for Dorothy Mersereau and Durable Power of Attorney document dated 4/10/00 |
| Exhibit D | A letter dated 10/16/02 from Robley Newton to Virginia Donovan |
| Exhibit E | Notice of Overpayment/Food Stamps dated 11/12/02 |
| Exhibit F | Copies of cancelled checks from Webster Bank |
| Exhibit G | Letter from Alan Rosenberg to the Office of Legal Counsel, Regulations and Administrative Hearings dated 7/28/03 |

*[handwritten: What of mother's medical diagnosis? "perfect memory" "congestive heart failure"]*

**Ruling and Order**

Only those exhibits herein noted will be accepted as part of the record for this Administrative Disqualification Hearing. All of the information submitted will remain, in the file but will not be marked as exhibits for this hearing record.

Dated at Hartford, Connecticut September 7, 2004.

Suzanne Searles
v.
Department of Social Services
September 7, 2004
Page 3

Luz Velez
Hearing Officer

Pc:     Robley Newton, Investigator, DSS, New Britain

STATE OF CONNECTICUT
DEPARTMENT OF SOCIAL SERVICES
OFFICE OF LEGAL COUNSEL, REGULATIONS
AND ADMINISTRATIVE HEARINGS
25 SIGOURNEY STREET
HARTFORD, CT 06106-5033

Suzanne Searles,    }
 Defendant     }
          }
 v.        }
          }
DEPARTMENT OF SOCIAL SERVICES, }
 Department

RE: Administrative Disqualification Hearing Held on June 16, 2004

## RULING ON MOTION TO ENTER EXHIBITS

### Background

During the Administrative Disqualification Hearing held on June 16, 2004, the Defendant requested that documents labeled exhibits A through Y from a previous administrative hearing, be entered into the record as her exhibits. An objection was raised by the Department's representative, as to the relevance of these exhibits to the case before the hearing officer. The hearing officer deferred a ruling on the acceptance or rejection of said exhibits, until such time as the documents could be reviewed and their relevance to the issue at hand could be determined.

### Findings of Fact and Discussion

I have reviewed all of the documents presented during the hearing, as well one additional packet received on June 25, 2004, while the record of the hearing remained open for additional submissions from the Department. I find that with the exception of the items listed below, the information contained in the Defendant's submission is not relevant to the issue of this hearing. Due to the volume of information, each item not entered into the record will not be listed herein.

The only issue to be addressed during the Administrative Disqualification Hearing (ADH) was, whether the Defendant committed an intentional program violation of the Food Stamp program, by failing to report income received from her mother. Much of the information contained in the

Suzanne Searles
v.
Department of Social Services
September 7, 2004
Page 2

*[handwritten: Ergo, the medical need for a car]*

Defendant's submission deals with previous administrative hearings, appeals of other issues to various courts, the Defendant's medical condition and doctor's appointments, correspondence with various individuals or other matters which are not the subject of this hearing.

Section 4-178 of the Connecticut General Statutes addresses evidence in a contested case and states in part that: "(1) any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence". The section also states that: "(8) the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence".

The following are the documents, which the hearing officer in accordance with the cited state statute, finds are relevant to the issue. These items have been entered into the record and marked as follows:

Exhibit A    Listing of all cash and Food Stamp assistance for the 1999 to 2003

Exhibit B    Lease Credit Application dated April 12, 2000

Exhibit C    Motor Vehicle Lease Agreement dated 4/20/00 signed by Paul Mersereau POA for Dorothy Mersereau and Durable Power of Attorney document dated 4/10/00

Exhibit D    A letter dated 10/16/02 from Robley Newton to Virginia Donovan

Exhibit E    Notice of Overpayment/Food Stamps dated 11/12/02

Exhibit F    Copies of cancelled checks from Webster Bank

Exhibit G    Letter from Alan Rosenberg to the Office of Legal Counsel, Regulations and Administrative Hearings dated 7/28/03

*[handwritten: What of mother's medical diagnosis? "perfect memory" "congestive heart failure"]*

**Ruling and Order**

Only those exhibits herein noted will be accepted as part of the record for this Administrative Disqualification Hearing. All of the information submitted will remain, in the file but will not be marked as exhibits for this hearing record.

Dated at Hartford, Connecticut September 7, 2004.

Suzanne Searles
v.
Department of Social Services
September 7, 2004
Page 3


Luz Velez
Hearing Officer


Pc:    Robley Newton, Investigator, DSS, New Britain

**STATE OF CONNECTICUT**
**DEPARTMENT OF SOCIAL SERVICES**
**OFFICE OF LEGAL COUNSEL, REGULATIONS**
**AND ADMINISTRATIVE HEARINGS**
**25 SIGOURNEY STREET**
**HARTFORD, CT 06106**

September 8, 2004
CERTIFIED MAIL

CLIENT ID #1404192

## ADMINISTRATIVE DISQUALIFICATION HEARING
## NOTICE OF DECISION

### PARTY

**Ms. Suzanne Searles**
45 Whispering Pines
Avon, CT 06001

### REASON FOR HEARING

The Department of Social Services made a request for an Administrative Disqualification Hearing (ADH) to seek disqualification of the Defendant from participation in the Food Stamp (FS) program for 12 months. The Department alleges that the Defendant committed an Intentional Program Violation (IPV) as a result of Defendant's failure to report receipt of income from her mother, during the period of February 2000 through June 2001. The Department also seeks recoupment of a $1204.00 willful withholding overpayment. *— what's this mean?*

The Defendant, Suzanne Searles, was notified of the initiation of the ADH process on February 12, 2004 via certified mail-restricted delivery, and was advised of a Defendant's rights in these proceedings. The ADH was scheduled for March 22, 2004 and was rescheduled at the request of the Defendant. The ADH was held before the undersigned on June 16, 2004. The Defendant was present at the hearing.

### PRESENT AT THE HEARING

Suzanne Searles, Defendant
Robley Newton, For the Department
Luz Velez, Hearing Officer

### STATEMENT OF ISSUE

The issue is whether the Defendant committed an intentional program violation of the Food Stamp program.

Searles
2

## FINDINGS OF FACT

1. The Defendant received Food Stamp benefits for the period February 2000 through June 2001. (Ex. 7 Benefit History Listing)

2. On December 21, 1999, the Defendant signed a statement acknowledging Defendant's responsibility to report to the Department any changes in income within 10 days. (Ex. 2 W-1236 B State Administered General Assistance Recipient/Agency Responsibilities Addendum)

3. On July 2, 2001, the Bristol sub-office of the Department of Social Services requested an investigation of the financial activities of the Defendant's mother. The request was prompted by a complaint that applied income was not being paid for the mother's nursing home care. (Hearing Summary)

4. The Department's investigation revealed that the Defendant's mother wrote a total of 39 checks payable to the Defendant, AARP Hartford Insurance and GE Capital from February 26, 2000 to June 20, 2001. The checks written to the Defendant total $8814.94. The checks payable to AARP Hartford Insurance and GE Capital total $1862.76 for a grand total of $10,677.70[1]. (Ex. 6 Listing of all checks and copies of cancelled checks, Defendant's Ex. F Copies of cancelled checks)

5. The Defendant did not report on an application dated September 2, 2000, or at any other time, Defendant's receipt of unearned income from her mother. (Ex. 9 9/2/00 W-1F Application Part 2: Special Eligibility Determination Document, See Fact #4)

6. The Defendant acknowledges receipt of unearned income from her mother. (Appellant's testimony, See Fact #8)

7. The Defendant received Food Stamp benefits totaling $1204.00 from February 2000 to June 2001 via the Electronic Benefits Transfer (EBT) system. No benefits have been expunged due to inactivity in the EBT account. (Ex. 13 Benefit History screen, Defendant's Ex. D Letter from Robley Newton dated 10/16/02 to Office of Legal Counsel, Regulations and Administrative Hearings)

8. The Defendant directly received unearned income from her mother as follows: (Ex. 6, Fact #5)

| February 2000 | $20.00 | December 2000 | $25.00 |
|---|---|---|---|
| April 2000 | $240.00 | January 2001 | $616.00 |
| July 2000 | $595.00 | February 2001 | $1007.62 |
| August 2000 | $1185.00 | March 2001 | $2256.09 |
| October 2000 | $929.00 | May 2001 | $200.00 |
| November 2000 | 641.23 | June 2001 | $1100.00 |

9. The following payments were made to AARP Hartford Insurance and GE Capital for a vehicle leased by the Defendant's mother. (Testimony, Ex. 6, Ex. B Lease Credit Agreement)

| AARP | | GE Capital | |
|---|---|---|---|

---

[1] Note: the Department's total as listed on exhibit 6 is off by $20.00.

| August 2000 | $122.95 | December 2000 | $269.09 |
| October 2000 | $122.95 | January 2001 | $269.09 |
| January 2001 | $122.95 | May 2001 | $269.09 |
| March 2001 | $122.95 | June 2001 | $296.09 |
| May 2001 | $186.60 | | |

10. For Food Stamp purposes payments made on behalf of the household which are not otherwise obligated to the household are excluded as income. Therefore the payments to AARP and GE Capital are not counted as income for the household. [UPM § 5015(A)(5)]

11. For Food Stamp purposes changes resulting in ineligibility or decrease in benefit are taken into consideration no earlier than the month following the month of the change. This is generally referred to as the 10-10 rule. [UPM § 1555.35(B)(2)(a)]

12. There are gaps in the receipt of income by the Defendant prior to February 2000, April 2000, July 2000, October 2000 and May 2001. These changes are subject to the 10-10 rule and any overpayments begin in the first month the Department could have made the appropriate change or correction, allowing for the notification period. [UPM § 1555.35(B)(2)(a), § 7045.15(E)(2)]

13. For the remaining months of November 2000 through March 2001 and June 2001, as the unreported income was received after the first month of the change the income is counted towards the Food Stamp benefit. [§ 1555.35(B)(2)(a)]

14. As a result of the unreported income the Defendant was overpaid as follows: (Ex. 9 FSFI screen 2/00-6/01, Ex. 10 UNIC screens 2/00-6/01, Ex. 12 SHEL screens 2/00-6/01)

| Month | 8/00 | 11/00 | 12/00 | 1/01 | 2/01 | 3/01 | 6/01 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| SSI | 512.00 | 512.00 | 512.00 | 530.00 | 530.00 | 530.00 | 530.00 |
| Cash benefit | 0 | 216.70 | 216.70 | 28.70 | 28.70 | 28.70 | 28.70 |
| Other income | 1185.00 | 641.23 | 25.00 | 616.00 | 1007.62 | 2256.09 | 100.00 |
| Total gross income | 1697.00 | 1369.93 | 753.70 | 1174.70 | 1566.32 | 2814.79 | 658.70 |
| Standard deduction | 134.00 | 134.00 | 134.00 | 134.00 | 134.00 | 134.00 | 134.00 |
| Adjusted gross inc.(AGI) | 1563.00 | 1235.93 | 619.70 | 1040.70 | 1432.32 | 2680.79 | 524.70 |
| 50% of AGI | 781.50 | 617.96 | 309.85 | 520.35 | 716.16 | 1340.40 | 762.35 |
| Shelter expenses[2] | 249.00 | 479.00 | 479.00 | 479.00 | 517.00 | 517.00 | 517.00 |
| 50% of AGI | 781.50 | 617.96 | 309.85 | 520.35 | 716.16 | 1340.40 | 762.35 |
| Shelter hardship[3] | 0 | 0 | 169.15 | 0 | 0 | 0 | 0 |
| AGI | 1563.00 | 1235.93 | 619.70 | 1040.70 | 1432.32 | 2680.79 | 524.70 |
| Minus shelter hardship | 0 | 0 | 169.15 | 0 | 0 | 0 | 0 |
| Net adjusted income (NAI) | 1563.00 | 1235.93 | 450.55 | 1040.70 | 1432.32 | 2680.79 | 524.70 |
| 30% NAI | 468.00 | 370.00 | 135.00 | 312.00 | 429.00 | 804.00 | 457.00 |
| Thrifty food plan for 1 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 |
| Food Stamp benefit | 10.00[4] | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 |
| Food Stamps issued | 117.00 | 117.00 | 127.00 | 72.00 | 83.00 | 83.00 | 21.00 |
| Overpayment | 107.00 | 107.00 | 117.00 | 62.00 | 73.00 | 73.00 | 11.00 |

[2] Shelter expenses are comprised of the actual rent paid and the Standard Utility Allowance ($249.00 for 8/00 to 1/01, $287.00 effective 2/01) because the SHEL screen indicates the Defendant received a Direct Cash Benefit (DCB) from the Energy Assistance Program.
[3] A shelter hardship deduction is given when the household's shelter expenses exceed 50% of the net adjusted income.
[4] Minimum benefit for a categorically eligible household of one. See UPM § 2545.05 and § 6020.115.

15. The Defendant's failure to report receipt of unearned income from her mother created a willful withholding overpayment of $550.00 for August 2000, November 2000 through March 2001 and June 2001. (See table at finding of fact #14)

16. The Defendant has had no prior FS Intentional Program Violations. (Hearing Summary)

17. The Defendant is currently receiving Food Stamp benefits. (Hearing Summary)

## CONCLUSIONS OF LAW

Section 17b-2 of the Connecticut General Statutes authorizes the Commissioner of the Department of Social Services to administer the Food Stamp program.

Section 17b-88 of the Connecticut General Statutes authorizes the Commissioner of the Department of Social Services to recover any public assistance overpayment and take such other action as conforms to federal regulations, including, but not limited to, conducting administrative disqualification hearings.

UPM § 1555.05 outlines the reporting requirements.

UPM § 1555.35(B)(2)(a) states that changes that cause ineligibility or a decrease in benefits are taken into consideration:

    (1)    no earlier than the month following the month of the change;
    (2)    no later than the month following the month in which the notice of adverse action would expire if the change had been timely reported.

UPM § 2545.05 lists which assistance units are categorically eligible for Food Stamp benefits and includes recipients of SSI benefits.

Uniform Policy Manual (UPM) § 5520.40(A)(1) provides that the Gross Income Eligibility test is used for all units except those which include one or more persons who are elderly (60 or more years of age-§ 5000.01) or disabled or are categorically eligible for Food Stamp benefits.

UPM § 5520.40(B) provides that the net applied income is used to determine income eligibility for those units which are not subject to the Gross Income Eligibility test; and excludes those units which are considered categorically eligible for Food Stamp benefits.

UPM § 5520.40(C) provides that assistance units that qualify as categorically eligible are not subject to gross or applied income eligibility tests.

Per UPM § 5015(A)(5) payments made to a third party on behalf of the household which are not otherwise obligated to the household is totally excluded.

UPM § 6020.15(C) provides that in all months except the initial month of eligibility, assistance units consisting of 1 or 2 members which have a calculated benefit amount of less than $10.00 receive a minimum allotment of $10.00.

UPM § 7050 outlines the Administrative Disqualification Hearing process.

UPM § 7050.30 sets forth the disqualification penalties and procedures as a result of an Intentional Program Violation. Section 7050.30(B)(2)(b) provides that for violations occurring after August 1, 1984, when a court does not specify a period of disqualification, the Department determines the length of the disqualification based upon the individual's previous history of intentional recipient error. For the first offense, the length of disqualification is one year.

Per UPM § 7045.15(E)(2) an overpayment caused by intentional recipient error begins in the first month the Department could have made the appropriate change or correction, allowing for the notification period if the overpayment is caused by the assistance unit's failure to report a change in circumstances within ten days of the change.

7 CFR 273.16(c) defines intentional Program violation:
    For purposes of determining through administrative disqualification hearings whether or not a person has committed an intentional Program violation, intentional Program violations shall consist of having intentionally: (l) made a false or misleading statement, or misrepresented, concealed or withheld facts, or (2) committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program Regulations, or any State statute for the purpose of using, presenting, transferring, acquiring, receiving, possessing or trafficking of coupons, authorization cards or reusable documents used as part of an automated benefit delivery system (access device).

7 CFR 273.16(e) provides that the State agency shall conduct administrative disqualification hearings for individuals accused of intentional Program violation.

7 CFR 273.16(e)(6) defines the criteria for determining intentional program violation:
    The hearing authority shall base the determination of intentional Program violation on clear and convincing evidence, which demonstrates that the household member(s) committed, and intended to commit, intentional Program violation as defined in paragraph (c) of this section.

*Based on the Findings of Fact, regulations, and Discussion herein set forth, it is concluded, as a matter of law, that the hearing record clearly and convincingly establishes that the Defendant intentionally failed to report to the Department the Defendant's receipt of unearned income from her mother, during the period of February 2000 through June 2001. The Defendant's intentional failure to report unearned income within ten days constitutes an intentional program violation of the Food Stamp program.*

## DISCUSSION

The Department's allegation that the Defendant committed an intentional program violation and, as such, should be disqualified from the Food Stamp program, is upheld. As a result, the Defendant is to be disqualified from the Food Stamp program for a period of twelve months.

Failure to report, in a timely manner changes in income, assets or other circumstance affecting eligibility and benefit level is an intentional recipient error and a violation of the Food Stamp program. In the present case, the Department has submitted clear and convincing evidence to

support its allegation that the Defendant failed to timely report receipt of income from a family member. The Defendant did not report the change in income within 10 days of receipt and subsequently failed to report the income on an application in September 2000.

The Defendant acknowledges that she received the amounts in question from her mother. She states that she must have reported the income at some point, but could not give any specific information as to when and how the information was reported. Her argument is that her mother was helping to support her because she was not receiving cash assistance from the Department at the time. Although it is true that she was not in receipt of cash assistance, for part of the time in question, the Defendant was receiving Food Stamp benefits and the income needed to be reported and counted toward the benefits issued. This is not a mitigating circumstance to substantiate that the violation was unintentional.

Having found that the Defendant committed an intentional program violation and such is subject to disqualification, the matter of the overpayment must now be addressed. The Department has created an overpayment of $1204.00 for the period of April 2000 through June 2001. This overpayment represents **all** of the benefits received during the stated time frame. I find that an overpayment occurred as a result of the Defendant's willful withholding of information. I further find that the overpayment is subject to repayment via a recoupment action, but for several reasons I disagree with the amount of said overpayment.

First of all, the Department created the overpayment on the basis that it found that the Defendant was ineligible for all the benefits received from February 2000 through June 2001 due to unreported income. However, there were months within the time period in question, where the Defendant did not receive financial assistance from her mother. The Department cannot determine that the Defendant was overpaid in months in which she did not receive income from another source.

Secondly, there are gaps in the sequence of months in which the Defendant received money from her mother. These gaps must be taken into account when determining if an overpayment exists in any given month. In accordance with UPM § 7045.15(E)(2), in the case of failure to report a change within 10 days resulting in an intentional recipient error, any benefit error or overpayment is considered to begin in the first month the Department could have made the appropriate change or correction. In doing this, the Department must allow for the appropriate notification period.

This is also supported in UPM § 1555.35(B)(2)(a) which, provides that changes resulting in ineligibility or a decrease in benefit amount, are taken into consideration in the month following the month of the change. Thus, for the month of February 2000 there would be no overpayment because this was the month of the change. As the income was not received in the month of March 2000 there is no benefit error for that month. The same holds true for April 2000, because this again was the month of the change. The gap in receipt of financial support in May or June 2000 makes July 2000 also the month of change. For the same reason there is no overpayment for the months of October 2000 and May 2001. Overpayments did occur in the remaining months of August 2000, November 2000 to March 2001 and June 2001 for a total of $550.00 as calculated herein.

A third difference between the Department's income figures and the computations herein, are the payments made to a third party, namely, the lease and insurance payments made to AARP Hartford Insurance and GE Capital. The Defendant argues that the vehicle she had use of was leased by her mother and was not therefore her vehicle. The Department contends that the Defendant herself

leased the vehicle. Regardless of who actually benefited from the lease, the lease documents are in the name of the Defendant's mother and as the lease and insurance payments were made directly to other parties they are excluded as income. In accordance with UPM § 5015(A)(5) payment made to a third party on behalf of the household which are not otherwise obligated to the household is totally excluded. I have therefore removed these amounts in the calculations herein. In either case because the payments were in the same months the Defendant received other checks from her mother and because she is categorically eligible, there would have been no effect on the overpayment as illustrated below.

One final factor affecting the amount of the overpayment, is the fact that as a recipient of SSI the Defendant would be categorically eligible for Food Stamp benefits. This means that she would not be subject to the gross or net income tests and as long as she meets the criteria she would be considered eligible for benefits. Based on the fact that she has an assistance unit of one person, in accordance with UPM § 6020.15(C) if the calculated benefit is less than $10.00, she would be eligible for a minimum allotment of $10.00. In the overpayment calculated herein because the calculated benefit was zero, the $10.00 minimum allotment was allowed. Thus the overpayments created by the Department for August 2000, November 2000 to March 2001 and June 2001 were reduced by the $10.00 allotment.

It should be noted that the Defendant had requested that items marked A through Y be admitted into the record as her exhibits. The documents were reviewed and a ruling detailing which items were entered as the Defendant's exhibits was issued under separate cover on September 7, 2004.

## DECISION

The Defendant is guilty of committing an intentional program violation of the FS program.

## ORDER

1. The Department is directed to disqualify the Defendant from participation in the FS program for 12 months upon receipt of this decision.

2. The Department is directed to adjust the $1204.00 overpayment to $550.00 as provided in the computation and discussion above and recoup the overpayment giving the Defendant credit for any amounts previously recouped of the $1204.00 overpayment.

3. No later than September 30, 2004, the Department will submit to the undersigned verification of compliance with this decision.

Luz Velez
Hearing Officer

Pc:    Kristine Ragaglia, Director, Fraud and Recoveries, Central Office
       Silvana Flattery, Regional Administrator, Northern Region, Hartford
       Robley Newton, Investigator, New Britain

## RIGHT TO REQUEST RECONSIDERATION

The appellant has the right to file a written reconsideration request within **15 days** of the mailing date of the decision on the grounds there was an error of fact or law, new evidence has been discovered or other good cause exists. If the request for reconsideration is granted, the appellant will be notified within 25 days of the request date. No response within **25 days** means that the request for reconsideration has been denied. The right to request a reconsideration is based on §4-181a(a) of the Connecticut General Statutes.

Reconsideration requests shall include specific grounds for the request: for example, indicate what error of fact or law, what new evidence, or what other good cause exists.

Reconsideration requests should be sent to: Department of Social Services, Director, Office of Legal Counsel, Regulations and Administrative Hearings, 25 Sigourney Street, Hartford, CT 06106-5033.

## RIGHT TO APPEAL

The appellant has the right to appeal this decision to Superior Court within **45 days** of the mailing of this decision. Even if a reconsideration has been requested, there are still only **45 days** to file an appeal. The right to appeal is based on §4-183 of the Connecticut General Statutes. To appeal, a petition must be filed at Superior Court. A copy of the petition must be served upon the Office of the Attorney General, 55 Elm Street, Hartford, CT 06106 or the Commissioner of the Department of Social Services, 25 Sigourney Street, Hartford, CT 06106. A copy of the petition must also be served on all parties to the hearing.

The **45-day** appeal period may be extended in certain instances if there is good cause. The extension request must be filed with the Commissioner of the Department of Social Services in writing no later than **90 days** from the mailing of the decision. Good cause circumstances are evaluated by the Commissioner or her designee in accordance with §17b-61 of the Connecticut General Statutes. The Agency's decision to grant an extension is final and is not subject to review or appeal.

The appeal should be filed with the clerk of the Superior Court in the Judicial District of New Britain or the Judicial District in which the appellant resides.