UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SUZANNE MERSEREAU SEARLES, Plaintiff    CIVIL NO.:3:90-626(PCD)

   pro se in forma pauperis                      3:97-2601 (PCD)

      v.                                         3:00-1115 (PCD)

WEST HARTFORD BOARD OF EDUCATION,et

   al., Defendants

MOTION TO REOPEN AND FOR RELIEF FROM JUDGMENT

   Pro se ifp plaintiff herein moves for reopening and for
relief from judgment inclusive of conjoinder of this court's
cases 2:90-626, 3:97-2601, and 3:00-1115.  The foregoing mo-
tion is dependent upon whether said motion is permissible
under Federal Rule of Civil Procedure 60(b)(6), 28 U.S.C.A.:

> ...Subsection (6) is itself clearly
> for equitable relief, and, if con-
> fined to situations not covered by the
> first three subsections, would be ex-
> tremely meagre...we think that it was
> meant to provide for situations of ex-
> treme hardship, not only those, if
> there be any, that subsections (1),(2)
> and (3) do not cover, but those that
> they do.  In short - to put it quite
> baldly - we read the subsection as
> giving the court a discretionary dis-
> pensing power over the limitation im-
> posed by the Rule itself on subsections
> (1),(2) and (3); and such seems to have
> been also the opinion of the Third Cir-
> cuit in United States v. Backofen,
> supra, 176 F.2d 263...
>
>         J. L. Hand in United
>         States v. Karahalias, 205
>         F.2d 331-335.

In each of the plaintiff's three cases she has presented good
faith, bona fide evidence/exhibits definitive of defendants'
and their attorneys' fraud in terming her "permanently physical-
ly disabled" from the full-time successful continuation of her
nearly twenty-year-tenured-teaching contract with them.  Rulings
in each of the aforecited cases reflect defendants' misrepresen-
tation, misconduct, sequestering/sealing of exhibits, and more
outright fraudulent allegations regarding plaintiff's meritori-
ous claims of constructive discharge per harassment, coercion,
perjurious testimony, and retaliation for her teachers' unions'

-1-

complaints re- same.  60(b)(6) permits relief from judgment at
any time/date for fraud upon the court by "...motion as pre-
scribed in these rules or by an independent action....". Defend-
ants' presentation of fabricated evidence and concealment of
<u>bona fide</u> probative medical, academic, and professional evalu-
ations of plaintiff's post-surgical instructional expertise
have undermined the integrity of judicial proceedings through-
out the past eighteen years.  She survives on SSI of $603.00/
month and food stamps.  Defendant Karahalias won reversal of
judgment and remand for further proceedings after seventeen
years as documented <u>supra</u>.

> ...the Court of Appeals remanded the case
> to grant the motion, saying that defendant's
> failure to act sooner was not neglect at all,
> but had resulted from forcible obstacles im-
> posed on his defense, so that his inaction
> came within the "any other reason" clause of
> Rule 60(b)(6) to which no fixed time limit
> applied....

U.<u>S</u>. <u>v</u>. <u>Karahalias</u>,
<u>supra</u>

As of February 11, 2000, sixty-five-year-old plaintiff no
longer qualified for long-term disability insurance income of
sixty per cent of her 1986-1987 salary agreement with defendant
Board of Education.  She applied for social security disability
income but was denied same in Judge Peter Zwecker's June 2000
ruling because three consulted physicians found no rationale,
medical or otherwise, why she should not be reinstated by defend-
ant Board.  CT Workers' Compensation Commission stress claims
were likewise fraudulently rejected as have been all nineteen
years of job applications for teaching positions throughout New
England.  CT Gen. Statute Sec. 30-290a, Reinstatement and Reim-
bursement, has been denied judicious rulings in all state courts.

As this court well knows, "extraordinary circumstances" per
F.R.C.P. 60(b)(6) mandating relief from judgment were exacerba-
ted by the verbal abuse and physical assault/battery dealt plain-
tiff on 12-14-94 by defendant school administrator Natalie
Schulman in a West Hartford grocery store whose egregious false-
hoods to police called to the scene by plaintiff included attacks
upon her victim's professional demeanor at the middle school to
which plaintiff was assigned from 9-85 to 3-87.  Schulman was not
even assigned to this school during that time period but she so
stated to police, in addition to scurrilous accusations re-

-2-

plaintiff's return of one school bookroom key in January 1991
and an even more slanderous allegation that plaintiff had caused
an uproar during a school assembly that same day when in truth
plaintiff had exited the school to drive to an appointment.
Schulman's criminality in knocking her victim to the floor of
the grocery store resulted in a third brain injury necessitating
corrective neurosurgery in November 1997 in addition to breast
and abdominal surgery for remediation of injuries inflicted.
Hartford Superior Court Judge Marshall Berger to whom this assault
case was assigned did absolutely nothing inclusive of denial of
pro se plaintiff's motion for continuance as she underwent the
aforementioned brain surgery in Boston's Massachusetts General
Hospital and convalescence in a Simsbury nursing facility.  As
proven in this court's cases 3:97-2601 (PCD) and 3:00-1115 (PCD),
admitted-to-plaintiff collusion between Schulman's attorney
Nicole Dorman and plaintiff's condominium association's attorneys
Alan and Howard Rosenberg culminated in fraudulent foreclosure
upon plaintiff's home as she recuperated again successfully.  Upon
discharge, she was forced to reside in four different motels and
thence, penniless and homeless, in a one-bedroom apartment.
(Addendum To Motion To Transfer To Original Venue And For Relief
From Judgment dated 9-11-04)

> ...Circumstances which actually prevent
> a party from protecting his own interests
> would seem from the cases to be a sure
> ground for relief under Rule 60(b)(6).  A
> party's disability in some respect, such
> as illness...or his absence because of
> lack of funds...or otherwise without fault
> of his own, represent extraordinary cir-
> cumstances which warrant relief under
> Rule 60(b)(6) "to accomplish justice..."

> Federal Rules of Civil
> Procedure, Lawyers'
> Edition, United States
> Code Service, Rules 60-
> End, p. 239, 1995.

> (emphasis added)

The appended next fifteen pages, so numbered, submitted to
United States Supreme Court on June 16, 2003, and the subsequent
four pages submitted to same as "Petition For Rehearing Addendum"
on June 16, 2003, more definitively summarize defendants' egreg-

iously fraudulent misrepresentation and criminal misconduct dealt pro se plaintiff during the past thirty-one years, i.e. 1975 to the present.

Wherefore, plaintiff pro se in forma pauperis prays this United States District Court Judge Peter C. Dorsey to honor her request for appointment of competent counsel and to reopen judgment in each of the cases enumerated on page one in the interests of long overdue truth and justice.

Respectfully submitted,

Suzanne M. Searles

### EPILOGUE

"If you shut up truth and bury it under the ground, it will but grow, and gather to itself such explosive power that the day it bursts through it will blow up everything in its way."

from J'accuse by Emile Zola

Furthermore, while represented by incompetent counsel from Septem-
ber 30, 1990 through ...


    <u>Pro</u> <u>se</u> <u>in</u> <u>forma</u> <u>pauperis</u> petitioner's numerous motions to
vacate judgment under FRCP 60(b)(6) for defendants' fraud upon
the court inclusive of perjury before an arbitration tribunal,
state and federal courts, and two workers' compensation commis-
sion formal hearing officers have fallen victim to judicial in-
discretion and negation.  Preclusion of <u>bona</u> <u>fide</u> medical and
academic exhibits of petitioner's excellent health <u>post</u> two
neurosurgical procedures upon her brain together with <u>bona</u> <u>fide</u>
defendants' school administrators' evaluations of her instruc-
tional skills <u>post</u> surgeries have been hidden from purview of
all ruling parties for sixteen years and counting.  Per Rule 60
(b)(6) plaintiff/appellant/complainant/petitioner is entitled
to relief in the nature of "writ of coram nobis."  (<u>United</u>
<u>States</u> <u>v</u>. <u>Alpine</u> <u>Land</u> <u>and</u> <u>Reservoir</u> <u>Co</u>., 1991, DC Nev 769 F
Supp 1142)  Defendants remain culpable of Title VII, ADEA, ADA,
and ERISA violations which protect employees from being wrong-
fully fired as well as verbally and physically abused <u>post</u>-
termination as is the scenario in this court's Case No. 028866.
    This Petition For Rehearing is filed pursuant to Rule 44.
2. in that "... its grounds shall be limited to intervening cir-
cumstances of a substantial or controlling effect or to other
substantial grounds not previously presented..."
    As recently as May 14, 2003, Connecticut judges voted to
abolish the decades-old secret file system by approving compre-
hensive new practice rules effective July 1, 2003. (Exhibits <u>A</u>,<u>B</u>)

> It is hard to imagine anything that
> brings the administration of justice
> into disrepute more than abuse of
> the law by the judiciary...The world
> of judges and lawyers and attorneys
> general is clubbish, self-protecting
> and recriminatory...

                         (Exhibit <u>B</u>)

In the instant case before this court, the petitioner's partic-
ularized showing of extraordinary circumstances per Rule 60(b)(6)
is copious, (<u>McPartland</u> <u>v</u>. <u>American</u> <u>Broadcasting</u> <u>Cos</u>. 1986, SD
NY 113 FRD 84, 42 BNA FEP Cas 766), as are "intervening circum-
stances of a substantial or controlling effect...not previously
presented..."  Denied salary, pension, social security benefits,
or any income other than SSI of $552./month, she has had to re-
search case law and to duplicate her exhibits sealed from court

to protect his judgment.... (Ibid. p. 152)  This pro se litigant has far more than cursorily made "... showing in support of its allegations..." re defendants' malfeasance/fraud stated supra and proven in each and every federal, state, and workers' compensation case filed during the past thirteen years. (H.K. Porter Co. v. Goodyear Tire and Rubber Co. 1976, CA6 Ohio 536 F2d 1115, 191 USPQ 486, 21 FR Serv 2d 1429)

> Perjurious testimony suborned by party to litigation, affecting material matter, will, if established, support bill of review in equity when fraud had by this means been perpetrated on court.

(Ibid. p. 153)

(Jungersen v. Axel Bros., Inc. 1954, DC NY 121 F Supp 712, affd per curiam CA2 NY 217 F2d 646, 104 USPQ 39, cert den 349 US 940, 99 L Ed 1267, 75 S Ct 784, 105 USPQ 517, reh den 350 US 868, 100 L Ed 769, 76 S Ct 99)  Emblematic of the following quotation, is the fact that defendants' counsel in state court proceedings from 1990 to the present is none other than the wife of Chief State's Attorney Bailey, Elizabeth Dee Bailey, who has gone so far in her pretextual attempts to 'paint' this petitioner as "brain-injured" as to announce to a court clerk that she (Mrs. Bailey) was afraid to remain alone in court chambers with "Mrs. Searles" while Clerk Heather xeroxed some of Searles's documents, already provided to Mrs. Bailey by Mrs. Searles.  This was stated only moments after Bailey slapped Searles's hand as the latter attempted to discern which papers the former wanted copied!

> Fraud on court is typically confined to most egregious cases such as bribery of judge or juror, or improper influence exerted upon court by attorney, in which integrity of court and its ability to function impartially is directly impinged...

(Ibid. p. 152)

> Generally only most egregious misconduct, such as bribery of judge or members of jury, or fabrication of evidence by party in which attorney is implicated, will constitute fraud on court under Rule 60(b), less egregious misconduct, such as nondisclosure to court of facts allegedly pertinent to matter before it...

(Ibid. p. 152)

At this juncture please see Exhibit C, #57: "Jury Says Bailey Violated Rights - Millions Awarded To Officer Who Said He Was

3

Silenced. Analogues to the instant case are astounding:

> A federal jury Wednesday awarded $2.7 million in damages to a state inspector who claimed that Chief State's Attorney John M. Bailey punished him for <u>blowing the whistle</u> on FBI misconduct. In a stunning rebuke to Connecticut's top prosecutor, the jury discounted Bailey's sworn testimony and concluded that he had <u>willfully violated the free-speech rights of an employee</u>...Dillon's lawyer, Karen Lee Torre, said the damage award was unusually large for a free-speech case. She called the verdict <u>a major victory for public employees who speak out about wrongdoing</u>...

<u>The Hartford Courant</u>
November 26, 1998
(emphasis added)

> "I feel vindicated," said Dillon, who had complained during trial that <u>Bailey had impugned his reputation</u>...

(<u>Ibid.</u>)
(emphasis added)

> He ordered his inspectors to remain silent and he temporarily <u>transferred</u> Kumnick <u>to a distant</u> Litchfield <u>courthouse</u>, a move that Kumnick viewed <u>as punishment</u>. Kumnick also was <u>threatened with arrest</u>, though <u>no action was taken</u>...

(<u>Ibid.</u>)
(emphasis added)

> "It was bizzaro world," Kumnick recalled Wednesday. "<u>I'm reporting a crime, and they are threatening to arrest me?</u>"

(<u>Ibid.</u>)
(emphasis added)

> He also transferred Dillon to Litchfield for 120 days, <u>the longest involuntary transfer allowed under</u> the inspectors' contract...

(<u>Ibid.</u>)
(emphasis added)

> The jury concluded that <u>Bailey's motive was retaliation</u>. For that, they awarded Dillon $800,000 in compensatory damages and $1.5 in punitive damages...

(<u>Ibid.</u>)
(emphasis added)

> Torre asked them (the jury) to make clear that <u>free speech is sacrosanct</u>. "This is not Beijing. This is not Cuba. This is the United States..."

(<u>Ibid.</u>)

Phrases such as those underlined <u>supra</u> might very well appear in a news article descriptive of the obstruction of justice encountered by this litigant during the past sixteen years while in pursuit of her own constitutional, statutory rights of due process against the local "Bailey Bailiwick." In addition to the foregoing Exhibit <u>C</u> #57, petitioner herein provides this Supreme Court with the two hundred nineteen other exhibits placed before the formal hearing officer which he fraudulently ignored during the formal hearing. Included therein are innumerable <u>bona fide</u> probative documents attesting to retaliatory acts and words of defendants inclusive of

-4-

administrative hostility, three involuntary transfers, verbal and physical caveats, broken promises, and so on. Said exhibits are arranged in more or less reverse chronological order:

> #206, June 5, 1975, petitioner's letter to then West Hartford Superintendent of Schools protesting the first of three (3) involuntary transfers

> #203, June 19, 1975, "Conard Teacher Hits Transfers":

>> The superintendent of schools and members of the Board of Education of West Hartford should be notified of the dismay and shock of the Conard faculty concerning the arbitrary, capricious, and inequitable manner by which some transfers were made from the Conard faculty to the faculties of other schools ...

>>> Charles H. Arnold, teacher
>>> Conard High School

> #202, July 20, 1975 edition of The Hartford Courant:

>> Between 15 to 20 grievances have been raised-either formally or informally-in the last three years, more, according to the West Hartford Education Association (WHEA) and school officials, than in the past...In addition, five of those grievances-all filed within the past two years-have gone all the way to the board...They represent the first time ever that grievances have gone that far... (emphasis added

> #201, July 25, 1975, Superintendent of Schools to petitioner:

>> The Board of Education met on July 24 and deliberated at length before making a decision regarding your grievance in being transferred from Conard High School. Your sincere interest in doing a quality teaching job was most evident to the Board...Your interest in teaching at a higher and more sophisticated academic level was recognized and appreciated ...I am convinced that you will carry to the King Philip School your teaching expertise and that King Philip students will benefit from your service there.... (emphasis added)

> #200, July 26, 1975, The Hartford Courant; #199, August 5, 1975, The West Hartford News:

>> ...Donald LaCroix, WHEA president, contends the board wanted to embarrass the teachers and discourage others from bringing grievances. He said the disclosure reflected badly on the teachers because of some critical comments about them made by Asst. Supt. Donald Hardy in a Courant article two weeks before...LaCroix said he wants school officials to publicly apologize for

the "error," to clarify in public that
the teachers discussed..."are qualified
..."and to promise not to do that again
...."

(emphasis added)

#198 through #173; # 176, August 21, 1978, petitioner to
WHPS Director of Personnel:

> ...After an involuntary transfer from
> Conard to King Philip Junior High School
> in September 1975, a transfer which I
> protested but fulfilled, I made formal
> application for transfer back to Conard
> in a letter to Mr. Hedrick dated Nov-
> ember 28, 1975. I am now facing a sec-
> ond involuntary transfer, this time to
> Hall High School, which if fulfilled
> will verify that I have been assigned
> to four different schools in six school
> calendar years. Coupled with the above
> is the fact that I have never taught
> high school juniors and seniors which
> comprise the major component of the as-
> signment at Hall. Thus it is that I re-
> spectfully request consideration for as-
> signment to Conard High School....

(emphasis added)

#202, July 20, 1975 edition of The Hartford Courant:

> LaCroix contends both cases are an example
> of age and sex discrimination in reverse
> because the board wants to keep a "balance"
> of teachers at various schools...
>
> ...The English teacher (Suzanne Mersereau
> Searles) who was transferred had taught 11
> years at the junior high level before going
> to the senior high when ninth graders were
> moved there temporarily two years ago.
> Hardy said he considered her not prepared
> to teach the required courses if she were
> to remain at the senior high without the
> ninth grades...

(emphasis added)

The probative-of-discrimination documents/exhibits continue in
reverse chronological order from #201-166 replete with medical
exhibits of the severe stress-engendered headaches undiagnosed
until the ruptured cerebral aneurysm of June 21, 1982 which occurred
at the end of a teaching day at Conard High School to which petition-
er had been transferred in September 1979 after a full academic year
with no salary, workers' compensation benefits, or long term disabil-
ity insurance benefits. She survived on student loans pursuing two
graduate English courses at Trinity College and two graduate English
courses at Middlebury College's Bread Loaf School of English.

-6-

In short, in July 1975 defendants told the press that this teacher was not prepared to teach in a high school without freshmen; in August 1978 defendants assigned the teacher to instruct high school juniors and seniors. Rationale, let alone equity, has never been defendants' 'strong suit.' In addition, this teacher's first year of teaching freshmen at King Philip School, 1975-1976, included nearly identical class rosters to those assigned to her as juniors and seniors at Hall High School in 1978-1979, the latter an assignment originally given to a Mrs. Gromulski who, with the backing of WHEA, had taken the assignment to grievance before defendant Board because of its preponderance of behavioral and learning disabled students. Yes, indeed, coercive, retaliatory, intimidating discrimination abounded in West Hartford Public Schools in the 1970's as well as in the 1980's and 1990's and currently into the twenty-first century in this petitioner's decades-long quest for professional equity and justice.

In 1985, _post_ complete recovery from two neurosurgical procedures performed in 1982 and 1984 for excision of two cerebral aneurysms, the first of which had ruptured, the teacher received a third involuntary transfer from Conard High School to King Philip Middle School to team-teach eighth grade English. Said completely-foreign-to-petitioner format stood in blatant violation of the "reasonable accommodation" proviso of the 1973 Sec. 504 Rehabilitation Act as amended in 1978. Nonetheless, she performed competently as proven in the only extant three administrative full-period evaluations of her teaching expertise during September 1985 through March 5, 1987, the last day defendants permitted her to teach. (Exhibits D, E, F) Victimized by defendant malfeasance once again _sans_ salary as throughout academic year 1978-1979, the teacher sought counsel from the Connecticut Education Association (CEA). Statutory "impartial arbitration tribunal" hearings were held throughout 1988-1989, but Findings and Recommendations, advisory only, were not issued until July 23, 1990, and Defendant Board met in special session one week later to the day. Denial of WHEA and the teacher's contractual right to due process re submission of tribunal-denied competent medical evidence, constructive discharge of the nineteen years and six months tenured-teaching contract was consummated (Exhibits #121-180) fraudulently and pejoratively by Defendant Board.

As stated and proven by petitioner throughout the past fif-
teen years, administrative partiality reigned throughout the
sixteen arbitration tribunal hearings of 1988-1989. Defendants'
choice of hearing member was none other that Neil Macy, emeritus
Director of Personnel of Hartford Public Schools:

> Further, the lie is thrown in the face
> of the protestations of the Superinten-
> dent and Chairlady of the Board of Edu-
> cation concerning the "humanity" of
> this Board who, with deliberate refrac-
> toriness, selected the renegade teach-
> er, Neil Macy, as their arbitrator for
> the board-teacher contract dispute.
> What is his fee, 30 pieces of silver?

(Exhibit C #203)

Chairman of said tribunal was a resident/taxpayer of West Hartford
who denied each and every one of the teacher's submissions of accur-
ate, competent medical assessments of her post-surgical prognosis.
USCS Court Rules, Rules 60-End, 1987, p. 2 supra states:

> To be relieved under Rule 60(b)(6) of
> entry of arbitration award, moving party
> was required to show that arbitrator(s)
> had violated ethical and legal standards
> for arbitrators and that violation crea-
> ted substantial danger of unjust result,
> and it was required to support motion
> with affidavits that its officers did
> not know of relationship between arbitra-
> tor and officer of opposing party.

(Ibid, p. 150)

Merit Ins. Co. v. Leatherby Ins. Co.(1983, CA 7 Ill) 714 F 2d 673,
cert den 464 US 1009, 78 L Ed 2d 711, 104 S Ct 529, later app (CA 7
Ill) 728 F2d 943, later app (CA 7 Ill) 737 F 2d, 39 FR Serv 2d 295,
cert den 469 US 918, 83 L Ed 2d 232, 105 S Ct 297.

   "Plaintiff contended that because dismissal for lack of subject
matter jurisdiction had prejudicial consequences in state court, dis-
missal was effectively 'with prejudice' and thus inconsistent with
alleged agreement." (Verret v. Elliot Equipment Corp. (1984 CA 5 La)
734 F 2d 235, 39 FR Serv 2d 311. (Ibid. p. 150):

> It has long been held that equitable re-
> lief from final judgment will be granted
> where attorney fraudulently, or without
> authority, assumes to represent party and
> connives at his defeat, or where attorn-
> ey, regularly employed, corruptly sells
> out his client's interest to the other
> side; where judgment is obtained in this
> manner, party, through no fault of its
> own, has no opportunity to present other-
> wise meritorious claim or defense.

-8-

The foregoing applies to CEA Attorney William Dolan who 'sold out this twenty-five-year-dues-paying member of CEA's interests to the other side' at the eleventh hour in March 1990 as well as to Igor I. Sikorsky, Jr., Esq., whom plaintiff had paid a twenty thousand dollar retainer in September 1990 only to have him drop her state court Case No. 90-0384053 _sans_ either consulatation or permission of his client who was pursuing graduate study in New Hampshire as mentioned _supra_.  Mr. Sikorsky likewise reneged on his agreement to fight the district court ruling granting defendants' summary judgment motion.  (Appendices to this Petition For Certiorari and Petition For Rehearing _in toto_):

> Where it has been shown that, after district court made its findings, conclusions, and entered injunction, _crucial witness had committed perjury, district court commits reversible error in continuing to credit witness's testimony without inquiring into extent of perjury and granting new trial or other relief._ Phillips v. Crown Cent. Petroleum Corp. (1977 CA 4) 556 F2d 702, 1977-1 CCH Trade Cases 61377, later app (CA 4 Md) 602 F2d 616, 1979-2 CCH Trade Cases 62743, cert den 444 US 1074, 62 L Ed 2d 756, 100 S Ct 1021.
>
> (USCS Court Rules,
>  Rules 60-End, 1987,
>  p. 153)
>  (emphasis added)

"Construction and application of provision of Rule 60(b) of Fed-eral Rules of Civil Procedure that Rule does not limit power of Federal District Court to set aside judgment for "fraud upon the court." 19 ALR Fed 761. (Annotation, _Ibid_. p. 152)

"Perjury by nonparty witness must be dealt with pursuant to Rule 60(b)(6)..." Lester v. Empire Fire and Marine Ins. Co. (1980, ED Mo) 87 FRD 466, 30 FR Serv 2d 1395, affd (CA 8 Mo) 653 F2d 353, 31 FR Serv 2d 1669.  (Ibid. p. 153)

> While attorney should represent his client with singular loyalty, such loyalty does not demand that he act dishonestly or fraudulently; on contrary, attorney's loyal-ty to court, as officer thereof, demands integrity and honesty in dealing with court, and when he departs from such standard in conduct of case, he perpetrates fraud upon court. Kupferman v. Consolidated Research and Mfg. Corp. (1972 CA2 NY) 459 F2d 1072, 16 FR Serv 2d 160, 19 ALR Fed 747.

-9-

<u>Since attorneys are officers of court,
their allegedly dishonest conduct invol-
ving misrepresentation and perjury would
constitute fraud upon the court. H.K.
Porter Co. v. Goodyear Tire and Rubber
Co. (1976 CA 6 Ohio) 536 F2d 1115, 191
USPQ 481, 21 FR Serv 2d 1429.</u>

(<u>Ibid</u>. p. 155)
(emphasis added)

The foregoing is cited in reference not only to then plaintiff's
attorneys Dolan and Sikorsky but also to defendants' numerous
attorneys inclusive of Elizabeth Dee Bailey, Marjorie Wilder, Susan
Krell, and Elizabeth Gilson each of whom stands guilty of egregious
outright slander, libel, and fraud. (Mrs. Bailey serves as West Hart-
ford Assistant Corporation Counsel; Mrs. Wilder served as Corporation
Counsel for West Hartford; Ms. Krell represented defendants in both
state and federal court; Ms. Gilson represented defendants before J.
Purtill in Hartford Superior Court).

Exceptional circumstances, in addition to the foregoing, abound
in the instant case before this court <u>re</u> defendants' violation of CT
Gen. Statute 31-290a in addition to negation of Title VII, ADEA,
ADA, and ERISA provisions encoded in Hartford Superior Court Case No.
90-0384053, No. 95-0550103, No. 97-0479375; CT Appellate Court Case
No. 13880, No. 20853, No. 14107, No. 22028, 19075; US District Court
Case No. 2:90-626 (PCD), No. 3:97-02601 (PCD), No. 3:00-CV-1115 (PCD),
3:97-MC-462 (TPS); and USCA Second Circuit Court No. 92-7912, No. 95-
9184, No. 96-9675, No. 98-9133, and No. 01-7007. Petitioner retains
copies of each file under lock and key. Because defendants in all
cases fraudulently ceased petitioner's salary, vested pension rights,
and insurances sixteen years ago and counting and because of her
abiding faith in this country's advocacy of justice for all its citi-
zens, she has pursued her meritorious claims in all the aforementioned
court venues as well as in this United States Supreme Court Case Num-
bers 94-6673, 98-2669, and the instant Case No. 028866. On July 23,
1990, <u>pro se</u> plaintiff filed her original federal complaint replete
with 167 exhibits. On August 27, 1990 she filed her state court com-
plaint of illegal tenured contract termination in Hartford Superior
Court well within thirty days of CT Gen. Statute Sec. 10-151, <u>et seq</u>.
provisos. Numerous exhibits of plaintiff's excellent health were
appended thereto which negate the defendants' July 30, 1990 special
session ruling of "permanent physical disability." The federal
complaint fell victim to summary judgment which Mr. Sikorsky did not
appeal. Defendants' state court Motion To Preclude medical exhibits
likewise fell victim to judicial indiscretion as did said state claim
<u>in toto</u> as mentioned supra. (Exhibit <u>G</u>)

10

Exceptional circumstances not previously presented to this Supreme Court include the verbal assault and physical battery of plaintiff in Superior Court Case No. 95-0550103 which has never been adjudicated because of the injuries inflicted by Defendant Schulman and resultant thoracic, brain, and visual injuries which rendered <u>pro se</u> plaintiff temporarily legally blind. The trial took place as plaintiff lay recuperating in a local nursing home post brain surgery at Mass. Gen. Hospital in Boston for excision of two more cerebral aneurysms at the apex of the basilar artery which were not present between 1984 and July 15, 1997. Plaintiff's Motion For Continuance was denied by said court.

"Other substantial grounds not previously presented" include the 220 exhibits placed by complainant/petitioner before Workers' Compensation Commissioner Walker in the instant case. As stated in Case No. 028866 Petition For Writ Of Certiorari, said commissioner/hearing officer would not admit or even peruse any of said exhibits of the decades'-long employer harassment/discrimination of complainant detailed <u>supra</u>. (Exhibit <u>C</u>)

This court reversed and remanded <u>pro se</u> public school teacher Ann Mery Charlton's case to the district court in <u>Charlton v. Paramus Board of Education</u>, Supreme Court Case No. 93-5498, which was submitted under Third Circuit LAR 34.1(a) on December 23, 1993 and decided on June 1, 1994. The ruling stated:

> ...for it (the district court) to
> consider the sole issue of Charl-
> ton's claim that the Paramus School
> Board sought to have her teaching
> certificate revoked in retaliation
> for her filing of a Title VII suit
> ....

(25 Fed.R. 3d 202)

As discussed <u>supra</u>, Petitioner Searles has endured twenty-eight years and counting of employer discriminatory harassment inclusive of caveats of trespassing charges if she ever again sets foot on school grounds. The physical battery of her person took place on 12-14-94, just three months before this court's March 20, 1995 denial of her Petition For Rehearing her Petition For Writ of Certiorari in Case No. 94-6673 which was docketed on July 28, 1994. This petitioner's attempts to obtain other employment have fallen on deaf ears:

> The local school board's lack of direct
> authority or responsibility for the cer-
> tification decision does not seem to us

-11-

to eliminate a potential Title VII vio-
lation. If an employer who does not
actually make the subsequent employment
decisions is liable under Title VII _if
he "blacklists" a former employee for
that employee's exercise of Title VII
rights, a school board can also be lia-
ble if it has a retaliatory motive_ for
an attempt to jump start or influence
state administrative proceedings to re-
voke Charlton's professional certifica-
tion. The absence of local regulatory
authority over the revocation decision
is not dispositive...Accordingly, _we
conclude that Charlton is not barred
from pursuing a Title VII claim merely
because she was not an employee at the
time her former employer potentially
acted to interfere with her prospects
of future employment..._

(Ibid. p. 202)
(emphasis added)

As stated in this court's Case No. 94-6673 as well as in Case No.
028866, the instant case, Searles has been "blacklisted" by defen-
dants for sixteen years and counting in her attempts to procure an-
other teaching position as confirmed by prospective employers dur-
ing interviews. The latter confide that defendants egregiously and
fraudulently state that this applicant has a post-surgical memory
deficit, rambling speech patterns, emotional instability, and ina-
bility to teach competently. (Please see Exh. C # 32, 37, 39, 42, 48,
105, 111, 134, 135, 138, 146-149, 155, 158, 159, 160, D, E, and F).

Exhibit G contains the transcript of the July 25, 1991 Hart-
ford Superior Court trial:

Your Honor will note that _there are_, what,
_three documents that are under seal_. We
have stated before, Your Honor, that _this
Court has authority under_, I guess it's
Subsection of the basic statute--_Subsec-
tion f of the basic statute states_ that
the--"_Any party to the appeal_"--that is
where we are now--"_may introduce evidence
in addition to the contents of the trans-
cript, if it appears to the Court that ad-
ditional testimony,_"--"_is necessary for the
equitable_--and I think "testimony" is equi-
valent to "evidence,"--"_is necessary for
the equitable disposition of the appeal,_"
_we would ask this Court to exercise its
equitable right to unseal those envelopes,
and review the medical testimony because
of the fact that we're honing in on the is-
sue of competent medical evidence. And those
documents have been sealed and not really
part of the record at the moment before Your
Honor. We're asking Your Honor to_

-12-

take those documents under consideration
in the ruling...

>                                        (Igor I. Sikorsky, Jr.,
>                                        Esq., pp. 30-31)
>                                        (emphasis added)

Judge Purtill's fraudulent ruling of July 31, 1991 - dismissal of
the appeal - follows the trial transcript.

As Exhibits A and B explain, as of July 1, 2003, the sealing
of civil case files will cease in Connecticut courts:

> Anonymous, sealed and sometimes entirely
> hidden case files had been permitted
> since 1980 to spare a select few from
> public embarrassment, but this arcane
> secret file "solution" created more em-
> barrassment for the courts than it elim-
> inated...Federal lawsuits filed by The
> Hartford Courant and The Connecticut
> Law Tribune, which first revealed the
> existence of Level I cases, seek an open
> accounting for those still-secret cases
> ...

>                                        ("Secret Files Abolished By Judges,"
>                                        Connecticut Law Tribune, week of
>                                        May 19, 2003)
>                                        (emphasis added)

Said ruling should indeed end the paradigm of judicial indiscretion
in the courts of the state of Connecticut.  In the instant case the
defendants' machinatious claim of untimely filing in Hartford
Superior Court on "August 27, 1990" will forever cease as is proven
in the final fourteen pages of Exhibit G by the stamp of the court
clerk, the Affidavit of the Deputy Sheriff Albenie Gagnon, and the
provisos of C.G.S. Sec. 52-593a:

> No cause or right of action shall be lost
> because of the passage of the time limit-
> ed by law within which such action may be
> brought if the process to be served is
> personally delivered to the office of any
> sheriff within the time limited by law,
> and such process is served, as provided
> by law, within fifteen days of such deliv-
> ery.  In any such case the officer making
> such service shall endorse under oath on
> his return the date of delivery of such
> process to him for service in accordance
> with this section....

>                                        (Exhibit G)

Returning to the federal court venue, petitioner refers this
court to its ruling in Tye v. Polaris Joint Vocational School Dis-
trict, 811 F.2d 315 (6th Cir. 1987), in which a public school board
of education terminated a female guidance counselor's contract on
pretextual grounds in violation of Civil Rights Act of 1964, Sec.
701 et seq., 42 U.S.C.A. Sec. 2000e et seq.  Reversal and remand

-13-

were granted Ann Tye, another victim of intentional discrimination, as was this petitioner who was told by the then West Hartford Super-intendent of Schools, Peter Relic, on November 19, 1986 that because she had filed CCHRO/EEOC complaints against his administration she had placed her employer and herself in an adversarial position and that he would personally see to it that her contract be terminated. (CCHRO is CT Commission on Human Rights and Opportunities). His words were uttered three and one-half months <u>post</u> the July 1986 grievance at which conclusion this petitioner was promised by Defendant Board that she would be the next English teacher assigned to a West Hart-ford high school full-time teaching position.   Just over three months later this teacher was constructively discharged/evicted from her seventeen-year-tenured-teaching position.

> The proper procedure for adjudication of Title VII claims is set forth by the Su-preme Court cases of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973), and <u>Texas Dept. of Com-munity Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed. 2d 207 (1981). On appeal, we review factual findings of the District Court under the "clearly er-roneous" standard set forth in Rule 52(a) of the F.R.C.P...The basic issue here is whether an emplyer may prevail when he stipulated to untrue reasons given to re-but a <u>prima facie</u> case and then refuses to give any coherent and understandable reason-subjective or objective-for an em-ployment decision covered by Title VII...
>
> (<u>Tye v. Polaris</u>, p. 317)

"If the employer fails to carry this burden, the plaintiff is en-titled to judgment as a matter of law."  <u>Burdine</u>, 450 U.S. at 254, 101 S.CT. at 1094."  (<u>Tye v. Polaris</u>, p. 318)  Exceptional circumstances in the instant case include defendants' and their attorneys' collusion with the state judiciary and West Hartford Police Department who, dis-patched to the scene of the 12-14-94 battery by Petitioner Searles's 911 call, refused to arrest or even reprimand the assailant school ad-ministrator.  Instead, they of the Bailey Bailiwick chose to believe the blatantly slanderous and fraudulent statements made to them by the assailant.  (Exhibit <u>H</u>)

This Supreme Court's June 4, 2001 unanimous ruling in <u>Pollard</u> v. <u>duPont deNemours and Co</u>., Case No. 00-763, 213 F.3d 933, captures the thrust of this petitioner's pleas for justice:

> In the Civil Rights Act of 1991, Congress determined that victims of employment dis-

crimination power and entitled to additional
remedies...to deter unlawful harassment
and intentional discrimination in the
workplace...that the remedies newly auth-
orized under Sec. 1981a were <u>in addition
to</u> the relief authorized by Sec. 706(g)
...As to front pay awards that are made
in lieu of reinstatement, we construe
Sec. 706(g) as authorizing these awards
as well...We see no logical difference
between front pay awards made when there
eventually is reinstatement and those made
when there is not. Moreover, to distinguish
between the two cases would lead to the
strange result that employees could re-
ceive front pay when reinstatement even-
tually is available but not when rein-
statement is not an option -whether because
of continuing hostility...or because of
psychological injuries that the discrimin-
ation has caused the plaintiff. Thus, the
most egregious offenders could be subject
to the least sanctions...We conclude that
front pay awards in lieu of reinstatement
fit within this statutory term...Congress
sought to expand the available remedies
by permitting the recovery of compensatory
and punitive damages in addition to pre-
viously available remedies, such as front
pay.  The judgment of the Court of Appeals
is reversed and the case is remanded for
further proceedings consistent with this
opinion.  It is so ordered....

(<u>Pollard v. duPont de
Nemours and Co.</u>,p. 4)

For all the factual and legal grounds enumerated in her
original Case No. 028866 Petition For Writ Of Certiorari and those
cited in this Petition For Rehearing, this <u>prima facie</u> case of
intentional and pretextual discrimination merits reversal and
remand.

Respectfully submitted,

Suzanne M. Searles, <u>pro
se in forma pauperis</u>
petitioner

-15-

Petitioner files this Motion For Rehearing Addendum pursuant to Rule 21.1. in that this Court's unanimous decision in Desert Palace, Inc. DBA Caesars Palace Hotel and Casino v. Costa, No. 02-679, was decided on the very day, June 9, 2003, that the instant Petition For Rehearing, No. 02-8866, was mailed to this Court. The two cases stand analogous relative to circumstantial and direct evidence of disparate treatment rendered an employee by employer as probative of intentional discrimination:

> We have often acknowledged the utility of circumstantial evidence in discrimination cases.  For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination."  Id., at 147 The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, n. 17 (1957).

539 U.S. ___(2003)
(emphasis added)

Because of defendants'/respondents' intentional and retaliatory treatment of petitioner as far back as July 1975, both local and statewide teachers' unions' counselors, as well as teaching colleagues, advised her to maintain a 'paper trail' of evidence.  As all courts well know, this she has done.  As argued in both the instant Petition For Writ Of Certiorari and Petition For Rehearing replete with Appendices of exhibits probative of respondents' pretextual, "mixed-motive" violations of Title VII of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. Sec. 2000e, et seq.; Age Discrimination in Employment Act (ADEA); Americans With Disabilities Act of 1990, 42 U.S.C. 12111 et seq.; ERISA; Connecticut General Statutes Sec. 10-151 and Sec. 31-290a; the gravamen of the aforementioned Petitions in Case No. 02-8866 is definitively proven and should be upheld by this Court and merit remand.

Following is a succinctly-stated, chronological outline of the aforementioned disparate treatment, intentional discrimination, perjurious testimony relative to permanent disability, and retaliatory constructive discharge of tenured teaching contract:

-1-

(All exhibits referenced are from the Appendix to this Petition
For Rehearing unless otherwise designated).

Exhibit

C#195-207  "...Between 15 to 20 grievances have been raised...in
the last three years, more, according to the West Hart-
ford Education Association (WHEA) and school officials
than in the past. In addition, five of those grievances
- all filed within the past two years - have gone all
the way to the board. Two will be heard this week.
They represent the first time ever that grievances have
gone that far...In the past, he (WHEA President LaCroix)
contends many teachers tried to work out problems inform-
ally and were promised solutions that never materialized
...The two transfer grievances the board will hear this
week involve Conard teachers who have been reassigned to
junior high schools. LaCroix contends both cases are an
example of age and sex discrimination in reverse because
the board wants to keep a balance of teachers at various
schools..."

The Hartford Courant, July
20, 1975, #202 (emphasis added)

C#159-161 "In no way are we saying this is not an excellent teacher
...It does not mean that she is not a highly qualified
teacher, we recognize that. It does not mean that her
interest in teaching at the high school will be ignored.
It will not...I do not know for a fact but
we have here a person of considerable integrity. I do
not question that in her mind and in her heart she probab-
ly would have preferred to resume at the high school level
because it is where she was when regretably she had to
leave active employment because of her disability...If
there is anything for which this party might hold us cul-
pable in the future it would be were we to ignore her in-
terest when the opportunity presented itself..."

#159, pp. 8-9, July 30, 1986
Associate Superintendent
of Schools Calvert (emphasis
added)

C#158  "I am writing in behalf of Suzanne Searles. As you may
know, she suffered a subarachnoid hemorrage and required
clipping of a left middle cerebral artery aneurysm in
1982. More recently she underwent a craiotomy for coating
(excision) of an asymptomatic right middle cerebral artery
aneurysm. It would be beneficial if she could teach at
the high school level where her course load would not be
as great and stress factors less...."

Edward J. Fredericks, M.D.
to WHEA President Fitzgerald,
August 6, 1986 (emphasis added)

C#156  "The Association (WHEA) chooses not to advance this griev-
ance beyond the Board of Education level...The Association
is encouraged in your remedy to the situation by assigning
Sue Searles at the first opportunity to a high school
position...."

Mr. Fitzgerald to Associate
Superintendent Calvert, August
25, 1986  (emphasis added)

Petition For Rehearing,
p. 14

"...then Superintendent of Schools,
Peter Relic, on November 19, 1986
..." told this petitioner "...that
because she had filed CCHRO/EEOC
complaints against his administration
she had placed her employer and her-
self in an adversarial position and
that he would personally see to it
that her contract be terminated..."

Needless to even say, on-the-job hostility, harassment, and false

accusations escalated at the middle school on the part of said

school's administrators towards this petitioner from 11-19-86 to

3-6-87, the day that the principal of said middle school forbade

the teacher to continue her teaching assignment.

C#155-154        Director of Personnel Services, James J. Moore's
                 "Summary of meeting Wednesday, January 14, 1987"

                 "Purpose: 1. to discuss (air) issues or incidents
                 involving Sue Searles at King Philip Middle School,
                 and (a) principal - Constance Beaudry
                        (b) vice-principal - Paul Berkel
                        (c) department head - Jean Martin
                             2. to attempt to resolve these issues
                             3. to develop a climate among all parties
                                such that the balance of the school year
                                (1987) can progress smoothly and without
                                incident..."
                                                    (emphasis added)

C# 150-154       "To: JJM (James J. Moore)...
                 Subject: Message from Connie Beaudry 2:30 p.m.
                 Date: 3/6/87...
                 Connie said she does not want her to return to her
                 classroom on Monday if she does show up. In fact,
                 she is going to insist that she accompany Connie
                 to this office to see you. Connie has been in touch
                 with Mickey Lawler and she will substitute begin-
                 ning Monday...."
                                          #155 (emphasis added)

C#147            "King Philip Middle" (School) 1987-88 faculty roster
                 with Suzanne Searles's name lined out

C#148            Team Leader Philip Hall's memo. to Dr. James Moore
                 dated "9/15/87"..."3. At 5:34 p.m. on Sept. 10, an
                 attorney called stating that he represented a Mrs.
                 Suzanne Searles and requested that I answer some
                 questions. I consented. The ensuing conversation
                 centered around 3 areas as I recall...
                 1. The name of Searles did in fact appear on my team
                 roster and on the student schedule.
                 3. I also stated that this whole situation was at an
                 administrative level above my role and referred him
                 to the principal, Mr. Berkel....
                                                    (emphasis added)

C#145            Petitioner's then attorney Christopher Sheehan's
                 file memo. of 11/12/87: "...He (Dr. Fredericks) said
                 that she would be able to perform in the classroom and
                 he stated the same to Jim Moore eight months ago..."
                                                    (emphasis added)

C#141   "February 26, 1988" to Suzanne Searles, Post Office Box
726, Hanover, New Hampshire 03755

Dear Mrs. Searles: This is to inform you that the West
Hartford Board of Education, at its meeting Thursday,
February 25, 1988, voted to consider terminating your
contract of employment.  Very truly yours, Lloyd Calvert
Superintendent...."

Additional direct and circumstantial evidence of mixed-
motive disparate treatment and broken promises abounds in the
Appendices in toto to this Petition For Rehearing, in the "sealed"-
by-respondents' competent medical evaluations of petitioner's
post-surgical excellent health, and of the physical attack upon her
person by a respondent school administrator on December 14, 1994.

## CERTIFICATION

Plaintiff hereby certifies that a copy of this motion was this day, January 19, 2006, served prepaid on the following:

West Hartford Corporation Counsel
50 South Main Street
West Hartford, CT  06107

Karsten and Dorman
29 South Main Street
West Hartford, CT  06107

Rosenberg and Rosenberg
920 Farmington Avenue
West Hartford, CT  06107

Peter R. Blum, Esq.
1 Linden Place-Apt. 307
Hartford, CT  06106

Martin A. Gould, Esq.
Gould, Killian, and Wynne
280 Trumbull Street
Hartford, CT  06103

Timothy McNamara, Esq.
102 Oak Street
Hartford, CT  06106

Edward J. Fredericks, M.D.
85 Seymour Street
Hartford, CT  06103

Igor I. Sikorsky, Jr., Esq.
121 Perry Street
Unionville, CT  06085

Suzanne Mersereau Searles,
pro se irp