UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ADDENDUM TO
MOTION FOR RECONSIDERATION/MOTION FOR INDEPENDENT ACTION
INCLUSIVE OF NINE EXHIBITS

| | |
|---|---|
| SUZANNE MERSEREAU SEARLES, Plaintiff | CIVIL CASE NUMBERS: |
| pro se in forma pauperis | 2:90 cv 626 (PCD) |
| v. | 3:97 cv 2601 (PCD) |
| WEST HARTFORD BOARD OF EDUCATION, ET | 3:00 cv 1115 (PCD) |
| AL., Defendants | JUNE 26, 2006 |

Four days ago the United States Supreme Court more definitively defined the type of retaliation prohibited by Title VII of the Civil Rights Act of 1964, as amended, in said Court's unanimous ruling for Defendant White in Burlington Northern and Santa Fe Railway Co. v. White, No. 05-259, decided June 22, 2006. Justice Breyer delivered the opinion of the Court as follows:

> Title VII of the Civil Rights Act of 1964 forbids employment discrimination against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.' Pub. L. 88-352, Sec. 704, 78 Stat. 257, as amended, 42 U.S.C. Sec. 2000e-2(a). A separate section of the Act-its anti-retaliation provision - forbids an employer from 'discriminating against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation. Sec. 2000e-3(a)...We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur in the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination....

-1-

This Court will well recall then Superintendent of West Hartford
Public Schools Peter Relic's words to Plaintiff on November 19,
1986 in the former's office: "Because you filed charges with CT
Commission on Human Rights and Opportunities/EEOC, you have
placed us in an adversarial position. I will see to it that your
tenured teaching contract with us be terminated." Plaintiff
had filed two such charges previous to 11-19-86.

The two U.S. Department of Justice, Civil Rights Division,
Employment Litigation Section right-to-sue letters dated October
20, 2000, were received certified mail by this Court's Clerk on
"October 25, 1990":

> Re: EEOC Charges Against West Hartford
> Board of Education, et al. No. 16AA01228.

Said letters confirmed Plaintiff's right to institute a civil
action under the following:

> Title VII of the Civil Rights Act of 1964,
> as amended, 42 U.S.C. 2000e, et seq...
> Title I of the Americans with Disabilities
> Act of 1990, 42 U.S.C. 12111, et seq., and
> Title V, Section 503 of the Act, 42 U.S.C.
> 12203....

Moreover, the bona fide wording of both ADA citations contains
specific prohibition against employers/defendants' use of
"retaliation," "coercion," and "intimidation." October 2000,
of course, fell subsequent to the physical and verbal assault
upon Plaintiff by Defendant Schulman on December 14, 1994 and
three (3) surgeries necessitated by the injuries inflicted.

Eight years ago today, June 26, 1998, two United States
Supreme Court Cases, Burlington Industries, Inc. v. Ellerth, No.
97-569, and Faragher v. City of Boca Raton, No. 97-282, were
decided in favor of employees Ellerth and Faragher for reasons
of constructive discharge/coercion, retaliation, and intimidation/
harassment of a sexual nature in the Ellerth case and of creation
of a hostile work environment in the Faragher case. Both women/
respondents won remand.

In addition to all exhibits, factual, and legal arguments
placed before this District Court in Case Numbers 2:90 cv 626,
3:97 cv 2601, and 3:00 cv 1115; Exhibit 2, "Claimant's Brief"
pp. 1-11 accurately documents the lengthy enumeration of com-
plaints in this Plaintiff's burden of establishing a prima facie
case of pretextual discrimination and resultant retaliation both
in the workplace and in refusal to re-employ. Therein, Title VII

-2-

Sections 703 and 704 unlawful employment practices of an
employer are enumerated just as they are by Justices Breyer
and Alito in Burlington Northern and Santa Fe Railway Co. v.
White, USSC No. 05-259, supra. Similar rulings may be found in
Robinson v. Shell Oil Company, USSC No. 95-1376; United States
v. Karahalias, 205 F.2d 331-335 USCA 2 (1953); (Please
see pp. 1-2 of this Plaintiff's "Motion To Reopen And For Relief
From Judgment" dated 1-19-06) and Price Waterhouse v. Hopkins
490 U.S. 228, 244 (1989)(plurality opinion):

> No one doubts that the term 'dis-
> criminate against' refers to dis-
> tinctions or differences in treat-
> ment that injure protected indivi-
> duals...
>
> Burlington Northern
> and Santa Fe Railway
> Co. v. White, supra,
> p. 3.

Justice Breyer continues:

> But different Circuits have come
> to different conclusions about
> whether the challenged action has
> to be employment or workplace re-
> lated and about how harmful that
> action must be to constitute re-
> taliation...
>
> Burlington, p. 3

> We granted certiorari to resolve
> this disagreement. To do so re-
> quires us to decide whether Title
> VII's anti-retaliation provision
> forbids only those employer actions
> and resulting harms that are related
> to employment or the workplace. And
> we must characterize how harmful an
> act of retaliatory discrimination
> must be in order to fall within the
> provision's scope....
>
> Burlington, p. 4

As argued factually and legally in this Plaintiff's three afore-
documented federal cases, not only was she constructively dis-
charged from Defendants' employment of nineteen years and six
months but was also physically and verbally assaulted by school
administrator Schulman on 12-14-94 in a West Hartford grocery
store. "Resulting harms" necessitated a third corrective brain
surgery in addition to thoracic and abdominal surgeries to the
injured former teacher. The instant U.S. Supreme Court opinion
would appear to mandate consolidation/joinder of this Plaintiff's
three cases for the following reasons:

The language of the substantive provision differs from that of the anti-retaliation provision in important ways. Section 703 (a) sets forth Title VII's core anti-discrimination provision in the following terms: 'It shall be unlawful for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment...

Section 704(a) sets forth Title VII's anti-retaliation provision in the following terms: 'It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment...because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' Sec. 2000e-3(a)(emphasis added) ...

Burlington, supra, p. 4 (emphasis added)

The underscored words in the substantive provision- 'hire,' 'discharge,' 'compensation, terms, conditions, or privileges of employment,' 'employment opportunities,' and 'status as an employee' - explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the anti-retaliation provision. Given these linguistic differences, the question here is not whether identical or similar words should be read in pari materia to mean the same thing...Rather, the question is whether Congress intended its different words to make a legal difference. There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well...The substantive provision seeks to prevent injury to individuals based on who they are, i.e. their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e. their conduct...

Burlington, supra, pp. 4-5 (emphasis added)

An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. See, e.g., Rochon v. Gonzales, 438 F.3d at 1213. (FBI retaliation against employee 'took the form of the FBI'S refusal...to investigate death threats a federal prisoner

made against (the agent) and his wife');
<u>Berry</u> <u>v</u>. <u>Stevinson</u> <u>Chevrolet</u>, 74 F.3d
980, 984, 986 (CA10 1996)(finding action-
able retaliation where employer filed
false criminal charges against former em-
ployee who complained about discrimination).

<u>Burlington</u>, <u>supra</u>,
p. 5

Not only did Defendant Schulman cause Plaintiff "harm outside
the workplace;" Schulman also "filed false criminal charges
against former employee" with the West Hartford police officer
dispatched to the scene of Schulman's physical assault/battery
of former employee Searles by the latter's 911 call to said
police. Yes, indeed, Plaintiff's three cases are inextricably
intertwined both factually and legally, and, as such, serve as
a paradigm of this <u>Burlington</u> <u>v</u>. <u>White</u> federal case. Not even
West Hartford Police Chief James Strillacci would arrest Natalie
Schulman when this victim phoned the Chief. He instead stated,
"We'll let the courts take care of this situation." In like
disregard of the law, Corporation Counsel Marjorie Wilder
offered Plaintiff/victim fifteen thousand dollars ($15,000.)
if the latter would drop her federal lawsuits against Town of
West Hartford's Board of Education inclusive of the aforementionned
assault case. Said bribe was offered just outside Superior Court
of Hartford just after a chambers' conference with Senior Judge
Jerry Wagner. Searles was denied appointment of <u>pro</u> <u>bono</u> counsel by
Superior Court; Judge Marshall Berger threw out/disposed of this
assault/battery case for failure to prosecute. Justice Breyer
continues on p. 7: "<u>The scope of the anti-retaliation provision</u>
<u>extends beyond workplace-related or employment-related retalia-</u>
<u>tory acts and harm</u>. We therefore reject the standards applied
in the Court of Appeals that have treated the anti-retaliatory
provision as forbidding the same conduct prohibited by the anti-
discrimination provision and that have limited actionable retal-
iation to so-called 'ultimate employment decisions.' See <u>supra</u>,
at 5..." In this Plaintiff's instant Motions to Reopen and For
Relief from Judgment of January 19,2006 and for Reconsideration/
and for Independent Action of May 22, 2006 she has definitively
met the standards outlined by Justice Breyer for both substantive
(loss of tenured teaching contract and pension) and anti-retaliation
provisions (employer-condoned battery resultant in a third brain
injury so grave as to render the victim permanently paralyzed in
third cranial nerve function).

We refer to reactions of a reasonable
employee because we believe that the
provision's standard for judging harm
must be objective. It avoids the un-
certainties and unfair discrepancies
that can plague a judicial effort to
determine a plaintiff's unusual sub-
jective feelings. We have emphasized
the need for objective standards in
other Title VII contexts, and those
same concerns animate our decision
here. See, e.g., Suders, 542 U.S. at
141 (constructive discharge doctrine);
Harris v. Forklift Systems, Inc., 510
U.S. 17, 21 (1993)(hostile work envir-
onment doctrine)...

Ibid., p. 8
(emphasis added)

As Plaintiff in this District Court Case Numbers 2:90 cv 626,
3:97 cv 2601, and 3:00 cv 1115 has pleaded objectively, not
"frivolously" as defendants fraudulently rebut, for sixteen years
and counting replete with prima facie legal and factual exhibits,
she returned to her tenured teaching in Defendants' schools only
to be assigned to a foreign-to-her middle school assignment and
not to her previous-to-two-corrective-brain-surgeries position
as a full-time teacher of high school English. Hence, her qualif-
ication for EEOC/Department of Justice intervention because of a
previous history of disability as defined under both the Rehabili-
tation Act of 1973 "reasonable accommodation" proviso and the same
under the Americans With Disabilities Act. (ADA) Plaintiff pro se
in forma pauperis again refers the Court to the multitude of
professional teaching expertise, medical, and Dartmouth College
academic exhibits placed before said Court during the past sixteen
years inclusive of the May 22, 2006 Exhibits three through nine:

...In no way are we saying this is not
an excellent teacher...It does not mean
she is not a highly qualified teacher...
It does not mean that her interest in
teaching at the high school will be ig-
nored. It will not. It must not... I
do not know for a fact but we have here
a person of considerable integrity...
If there is anything for which this party
might hold us culpable in the future it
would be were we to ignore her interest
when the opportunity presented itself...

-words of Assistant
Superintendent of
Schools Lloyd Calvert
at conclusion of
West Hartford Education
Association (WHEA)
July 21, 1986 grievance

-6-

Finally, we note that contrary to the
claim of the concurrence, this stand-
ard does <u>not</u> require a reviewing court
or jury to consider "the nature of the
discrimination that led to the filing
of the charge." <u>Post</u>, at 6 (Alito, J.
concurring in judgment). Rather, the
standard is tied to the challenged re-
taliatory act, not the underlying con-
duct that forms the basis of the Title
VII complaint. By focusing on the mater-
iality of the challenged action and the
perspective of a reasonable person in
the plaintiff's position, <u>we believe this
standard will screen out trivial conduct
while effectively capturing those acts
that are likely to dissuade employees
from complaining</u> or assisting in com-
plaints <u>about discrimination</u>...

Ibid., p. 8
(emphasis added)

### III

Applying this standard to the facts of
this case, <u>we believe that there was a
sufficient evidentiary basis to sup-
port the jury's verdict on White's re-
taliation claim</u>. See Reeves v. Sander-
son Plumbing Products, Inc., 530 U.S.
133, 150-151 (2000) <u>The jury found that
two of Burlington's actions amounted to
retaliation: the reassignment of White
from forklift duty to standard track la-
borer tasks and the 37-day suspension
without pay</u>...

Ibid., p. 8
(emphasis added)

In the instant case Plaintiff Searles had been promised by
Director of Personnal Defendant Moore that were she to perform
competently <u>for one year</u> in a middle school team teaching venue,
she would be reassigned to a high school pre-surgical assignment.
As stated <u>supra</u> on p. 6 and throughout all three cases before
this court, broken promises abounded. Thus, she returned to the
middle school for a second year only to be harrassed, cajoled,
intimidated, and coerced - constructively discharged - on March 6,
1987. "Suspension without pay" has now run nineteen years and
counting. Retaliatory tactics have gone so far as to alert other
local school districts that the latter should not hire Plaintiff
for either a full-time teaching position or even as a substitute
instructor. Likewise fraudulently and illegally negated have been
Plaintiff's applications for reinstatement with West Hartford.

The District Court instructed the jury
to determine whether respondent "suffered
a materially adverse change in the terms
or conditions of her employment," App. 63,
and the Sixth Circuit upheld the jury's
finding based on that same stringent inter-

pretation of the anti-retaliation pro-
vision (the interpretation that limits
Sec. 704 to the same employment-related
conduct forbidden by Sec. 703). Our
holding today makes clear that the jury
was not required to find that the chal-
lenged actions were related to the terms
or conditions of employment. And insofar
as the jury also found that the actions
were "materially adverse," its findings
are adequately supported...

                                                Ibid., p. 8

Common sense suggests that one good way
to discourage an employee such as White
from bringing discrimination charges
would be to insist that she spend more
time performing the more arduous duties
and less time performing those that are
easier or more agreeable...          Ibid., p. 9

Plaintiff Searles had been assigned four high school English
classes, one extracurricular period assignment daily, and home-
room supervision prior to the ruptured cerebral aneurysm on June
21, 1982. Returning from two neurosurgical brain aneurysms'
excision in September 1985, she was assigned five middle school
English classes daily, one full-period team meeting daily, cafe-
teria duty daily, and homeroom supervision daily. Never in her
career had she been assigned to a middle school with foreign-to-
her curriculum, faculty, and administration.

That is presumably why the EEOC has
consistently found "retaliatory work
assignments" to be a classic and 'wide-
ly recognized' example of 'forbidden re-
taliation.' 2 EEOC 1991 Manual Sec. 614.
7, pp. 614-31 to 614-32; see also 1972
Reference Manual Sec. 495.2 (noting Com-
mission decision involving an employer's
ordering an employee 'to do an unpleasant
work assignment in retaliation' for filing a
racial discrimination complaint); EEOC Dec.
Dec. No. 74-77, 1974 WL 3847, ('Employers
have been enjoined ' under Title VII 'from
imposing unpleasant work assignments upon      (emphasis
an employee for filing charges').   Ibid., p. 9, added)

The Court will recall Plaintiff's WHEA grievance of July 1975
against West Hartford Board of Education for assignment to a
junior high school in spite of her seniority over almost all
other high school teachers of English. (See entire pagination of
January 2006 "Motion To Reopen And For Relief From Judgment.")
She was assigned five classes daily in five different classrooms
daily on two different floors. Not one room was an English class-
room. Retaliation, indeed!
                              -8-

The aforementionned 1975 first of three involuntary
transfers from the very successful teaching of high school
English to an "unpleasant work assignment(s)" with much
"more arduous duties" as just outlined, signaled the advent
of the excruciating headaches resultant in an unpaid medical
leave spanning academic year 1978-1979.  As stated previously,
not until Sept. 1979, with her teachers' union (WHEA) backing,
was Plaintiff rightfully reassigned to her high school position
where she had not only co-authored the curriculum but also held
seniority over thirty-one (31) other teachers of English in
West Hartford Public Schools.  Here she taught full-time until
the next-to-last school day of 1982 when a left middle cerebral
artery aneurysm ruptured in her brain rendering her comotose
for nine days until neurosurgical intervention.  At that time
a second cerebral aneurysm of the right middle cerebral artery
was detected but could not be excised until July 1984 or until
the patient had regained her ability to walk, speak, and regain
short-term memory losses related to the nine days of comotose
hemorrhaging described above.

Numerous physicians in Boston, Hartford County, and at
Dartmouth-Hitchcock Medical Center in New Hampshire, the site
of the 1984 surgery, attribute the stress-induced aneurysms'
formation to the physically and emotionally draining hardships
suffered during completion of the arduous, unpleasant assign-
ment to a junior high school during academic years 1975-6,
1976-?, and 1977-8 as described supra.  Coupled with the physi-
cal draining of transporting English teaching materials inclusive
of dictionaries up and down two flights of stairs to five differ-
ent classrooms daily, Defendant Board of Education issued press
releases - see second set of pages 5 through 7 in the instant
"Motion To Reopen And For Relief From Judgment" - discriminating
and retaliatory in nature.  For example, on pp. 5-7 are several
excerpts from The Hartford Courant of July and August 1975 not-
ing, inter alia, that this teacher's grievance was but one of
five that had gone "all the way to the board...They represent
the first time ever that grievances have gone that far..."
Retaliation reared its 'ugly head' repeatedly as follows:

>...WHEA president, contends the board
>wanted to embarrass the teachers and discour-
>age others from bringing grievances.  He
>said the disclosure reflected badly on the
>teachers because of some critical comments

about them made by Asst. Supt. Donald
Hardy in a <u>Courant</u> article two weeks
before...LaCroix said he wants school
officials to publicly apologize for
the 'error,' to clarify in public
that the teachers discussed...'are
qualified'...'and to promise not to
do that again....'

<u>The West Hartford News</u>,
August 5, 1975

...The two transfer grievances the board
will hear this week involve Conard (HS)
teachers who have been reassigned to
junior high schools.  LaCroix contends
both cases are an example of age and
sex discrimination in reverse because
the board wants to keep a balance of
teachers at various schools...

<u>The Hartford Courant</u>,
July 20, 1975

The instant Plaintiff was forty years old on February 11, 1975.
No public or other apology was ever forthcoming from either Mr.
Hardy or from the Defendant Board of Education.

...The English teacher who was transferred
had taught 11 years at the junior high
level before going to the senior high when
ninth graders were moved there temporarily
two years ago.  Hardy said he considered
her not prepared to teach the required cour-
ses if she were to remain at the senior high
without the ninth grades...

<u>Ibid</u>., July 20, 1975

Justice Breyer continues as follows:

To be sure, reassignment of job duties
is not automatically actionable.  <u>Whether
a particular reassignment is materially
adverse depends upon the circumstances of
the particular case, and 'should be judged
from the perspective of a reasonable person
in the plaintiff's position, considering
all the circumstances.</u>'  Oncale, 523 U.S.,
at 81.  But here, the jury had before it
considerable evidence that the track la-
borer duties were 'by all accounts more
arduous and dirtier';  that <u>the forklift
operator position was</u> objectively <u>consid-
ered a better job</u> and <u>the male employees
resented White for occupying it.</u>' 364
F.3d, at 803...<u>Based on this record, a
jury could reasonably conclude that the
reassignment of responsibilities would
have been materially adverse to a reas-
onable employee</u>...

<u>Burlington</u>, <u>supra</u>,
p. 9
(emphasis added)

-10-

The instant Plaintiff, from eleven years of previous junior high school teaching experience to her requested transfer to Conard High School in 1973, well knew that high school instruction of English was far more attractive and less arduous than dealing with five classes daily of twelve to fourteen-year-olds. Moreover, the intellectual curiosity of high school college-bound students as well as the English curriculum itself comprise a far more attractive instructional setting for the dedicated teacher. (Please see Exhibits three (3) through nine (9) of this "Motion For Reconsideration/Motion For Independent Action Inclusive Of Nine Exhibits").

Justice Breyer continues:

> ...After all, throughout its history, Title VII has provided for injunctions to 'bar like discrimination in the future,' Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)...an important form of relief. Pub. L. 88-352, Sec. 706(g), 78 Stat. 261, as amended, 42 U.S.C. Sec. 2000e-5(g).
>
> Burlington, supra, p. 9

Before proceeding further with both the factual and legal analogies between the Burlington v. White case and the gravamen of this Plaintiff's three tightly-intertwined federal court cases, she feels compelled to state the obvious modus operandi of Defendant Board of Education: why not assign the returning teacher to the identical school edifice where, years earlier, she had been involuntarily assigned and subjected to inhumane, retaliatory working conditions which culminated in the emergence of two life-threatening brain aneurysms? Secondly, why not effectuate pretextual 'constructive discharge' by again making her life miserable by means of both verbal harassment and a pretextual letter of reprimand?

> And we have no reason to believe that a court could not have issued an injunction where an employer suspended an employee for retaliatory purposes, even if that employer later provided back pay. In any event, Congress amended Title VII in 1991 to permit victims of intentional discrimination to recover compensatory (as White received here) and punitive damages, concluding that the additional remedies were necessary to 'help make the victim whole.' West v. Gibson, 527 U.S. 212,

-11-

219 (1999)(quoting H.R. Rep. No.
102-40, pt. 1, pp. 64-65 (1991);
see 42 U.S.C. Secs.1981a(a)(1),
(b). We would undermine the sig-
nificance of that congressional
judgment were we to conclude that
employers could avoid liability
in these circumstances...

Burlington, supra,
p. 9
(emphasis added)

Neither do we find convincing any
claim of insufficient evidence.
White did receive back pay. But
White and her family had to live
for 37 days without income. They
did not know during that time whether
or when White could return to work.
Many reasonable employees would find
a month without a paycheck to be a
serious hardship. And White described
to the jury the physical and emotional
hardship that 37 days of having "no in-
come, no money" caused. 1 Tr. 154...

Burlingon, supra,
pp. 9-10
(emphasis added)

At this juncture pro se in forma pauperis Plaintiff must remind
this Court that she has been denied the promised reinstatement
and reimbursement per CT General Statute Sec. 31-290a for nine-
teen years and counting since administrative banishment from
continuation of her career on March 6, 1987 in spite of the
following administrative promises: 1) Assistant Superintendent
Calvert's words at the conclusion of the 1986 grievance, 2)
Director of Personnel Moore's assurances stated at the conclusion
of the 1-19-87 'conference' in his office, and 3) the faculty
roster of King Philip Middle School for 1987-88 with Searles's
name lined out. Much more precise wording of the foregoing may
be found in the multitude of federal case exhibits submitted by
Plaintiff but surreptitiously removed by opposing counsel before
moving for summary judgment. Coupled with the foregoing were
Assailant Schulman's words to the West Hartford police officer
called to the scene of her attack upon Searles: 4) that Mrs.
Searles had entered the middle school in January 1991, hurled
keys at a school secretary, and caused an uproar in the auditorium
upsetting faculty and students. Schulman continued the foregoing
slander by stating that Searles had been warned that should she
step foot on any West Hartford school's grounds, she would be
arrested. As noted supra, the police did absolutely nothing.

-12-

5) As stated earlier, Schulman's attorney and attorneys for River Mead Homeowners' Association admittedly colluded to fore-close upon Plaintiff's home in spite of the latter's hand-delivering a check for nine hundred dollars to the offices of Rosenberg and Rosenberg, P.C. as told to do by Judge Wagner's son-in-law, also an attorney, after speaking with Mr. Howard Rosenberg on the phone. Plaintiff drove to the West Hartford Center office, presented the check to Howard, and was refused receipt of same. 5) As noted earlier, foreclosure transpired as Searles lay in a Simsbury nursing facility, Governor's House, recovering from the brain surgery necessitated by Schulman's battery.

> A reasonable employee facing the choice between retaining her job (and paycheck) and filing a dis-crimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee even-tually received back pay. Cf. Mitchell, 361 U.S., at 292 ('It needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employ-ees quietly to accept substandard conditions'). Thus, the jury's con-clusion that the 37-day suspension without pay was materially adverse was a reasonable one....
>
> IV
>
> For these reasons, the judgment of the Court of Appeals is affirmed. It is so ordered....

Ibid., p. 10
(emphasis added)

One further reiteration of retaliation, the second of three involuntary transfers, must be noted. Had Plaintiff Searles re-ceived accurate medical diagnosis as to the genesis of the afore-mentionned headaches throughout academic years 1975-1979 prior to the rupture  and subsequent hemorrhaging of June 21, 1982, she had been assigned to Hall High School to teach juniors and seniors during 1978-1979 to fill that instructional position vacated by another English teacher who had taken the assignment to grievance. Said transfer stood in definitive contradiction to administrative statements to the press on July 20, 1975 that the former "...considered her not prepared to teach the required courses if she were to remain at the senior high without the ninth grades... (supra, p. 10) Plaintiff pro se rests her latest plea for justice.

Respectfully Submitted,

Suzanne Mersereau Searles
45 Whispering Pines Road
Avon, CT  06001
860-674-0617

Respectfully Submitted,

Suzanne Mersereau Searles
45 Whispering Pines Road
Avon, CT  06001
860-674-0617

-14-

<u>CERTIFICATION</u>

   Plaintiff hereby certifies that a copy of this Addendum
To Motion For Reconsideration/Motion For Independent Action
Inclusive Of Nine Exhibits was this day, 30 June 2006,
either mailed prepaid or hand-delivered to the following:

Jonathan C. Sterling, Esq.
Jorden Burt, LLP
175 Powder Forest Drive, Suite 201
Simsbury, CT  06089

Nicole Dorman, Esq.
Karsten and Dorman
29 South Main Street
West Hartford, CT  06107

Rosenberg and Rosenberg
920 Farmington Avenue
West Hartford, CT  06107

Peter R. Blum, Esq.
1 Linden Place, Apt. 307
Hartford, CT  06106

Martin A. Gould, Esq.
Gould, Killian, and Wynne
280 Trumbull Street
Hartford, CT  06103

Timothy McNamara, Esq.
102 Oak Street
Hartford, CT  06106

Edward J. Fredericks, M.D.
85 Seymour Street
Hartford, CT  06103

Igor I. Sikorsky, Jr., Esq.
121 Perry Street
Unionville, CT  06085

Hugh Barber, Esq.
Office of the Attorney
  General
55 Elm Street
Hartford, CT  06106

CT Appellate Court
Clerk's Office-AC 26767
231 Capitol Avenue
Hartford, CT  06106

Hon. Gov. M. Jodi Rell
State Capitol Building-
  Executive Offices
210 Capitol Avenue
Hartford, CT  06106

Paul E. Mersereau, Esq.
Drew and Mersereau LLC
47 West Main Street
Avon, CT  06001

Respectfully submitted,

Suzanne M. Searles, <u>pro
se ifp</u> Plaintiff